*In re* MARRIAGE OF THOMAS WISNIEWSKI, Petitioner and Counterrespondent-Appellant, and VIRGINIA WISNIEWSKI, Respondent and Counterpetitioner-Appellee.

Fourth District   Nos. 17437, 17477 cons.

Opinion filed July 12, 1982.

Robert I. Auler, of Auler Law Offices, of Urbana, for appellant.

Greaves & Lerner, of Champaign, for appellee.

JUSTICE MILLS delivered the opinion of the court:
Division of pension benefits in a dissolved marriage.
Expert testimony should be heard to assist the court.
None here.
We send it back.

Petitioner appeals from the apportionment of property and award of maintenance following dissolution of marriage. The main point of contention involves classification of his pension as marital property and the valuation of the pension. He also appeals an order finding him in contempt for failure to pay the maintenance and make other arrangements for settlement in compliance with the court order. We reverse and remand the property and maintenance awards. The contempt finding is affirmed.

Petitioner, Thomas Wisniewski, filed a petition for dissolution of marriage on November 26, 1980, in the Champaign County circuit court.

Following hearings, judgment of dissolution was filed on June 8, 1981. Marital property other than petitioner's pension was awarded such that the wife had marital property valued at $97,156, and petitioner had marital property valued at $15,950. These values are not disputed. Petitioner was also awarded his pension. Respondent was to receive $600 maintenance per month until her remarriage or death. There are no minor dependents.

## PENSION

Petitioner's pension derived from his service to and contributions into the Teachers' Retirement System of the State of Illinois (Ill. Rev. Stat. 1979, ch. 108½, par. 16—101 *et seq.*) and the State Universities Retirement System (Ill. Rev. Stat. 1979, ch. 108½, par. 15—101 *et seq.*). He asserts the pension is not properly classified as marital property because the benefits are too speculative and also because the Act creating the State Universities Retirement System reveals a legislative intent that the benefits not go to a divorced spouse. Even if the benefits are properly classified as marital property, petitioner argues the distribution was inequitable.

The contention that the pension cannot be marital property because it is too speculative is based upon *In re Marriage of Pickell* (1979), 76 Ill. App. 3d 855, 395 N.E.2d 673. The *Pickell* court found that respondent's interest in the retirement fund under the Federal Railroad Retirement Act was not a present asset of the respondent since any present value was clearly speculative. However, that respondent was 38 years old at the time of the proceedings and he was not entitled to receive any benefits until he reached age 60. He could not withdraw the funds he had contributed. Furthermore, the court could not determine the amount of pension respondent would receive even assuming he continued working for the required time. For these reasons the pension was not considered a present asset of the respondent. The court also noted alternatively that the United States Supreme Court had determined that benefits payable under the Railroad Retirement Act were not subject to division because Congress intended to exclude divorced spouses from reaping those benefits. See *Hisquierdo v. Hisquierdo* (1979), 439 U.S. 572, 59 L. Ed. 2d 1, 99 S. Ct. 802.

■█ In the present case the trial court found that the petitioner could currently cash in his interest for a refund of his contributions in the amount of $35,013. The court further found that petitioner was 54 years of age at the time of the proceedings and would be entitled to monthly benefits of $864 if he worked to age 55 and monthly benefits of $1,235 if he worked to age 60. The present cash refund value of the pension, the ability to determine future benefits, and the proximity of this petitioner's present age to the age he would be entitled to receive benefits all dis-

tinguish this case from *Pickell*. Furthermore, although placing a present cash value on the nonvested pension benefits may be difficult, "difficulties in valuation are not an insurmountable barrier to including a pension or profit-sharing interest, whether matured, vested or nonvested, as marital property." (*In re Marriage of Hunt* (1979), 78 Ill. App. 3d 653, 663, 397 N.E.2d 511, 519.) The benefits from petitioner's pension are not too speculative to be classified as marital property.

Petitioner bases his legislative-intent argument on *Hisquierdo* and *McCarty v. McCarty* (1981), 453 U.S. 210, 69 L. Ed. 2d 589, 101 S. Ct. 2728. *Hisquierdo* pitted the Federal Railroad Retirement Act against the California community property law. *McCarty* pitted military nondisability retirement pay against the California community property law. In both cases, the United States Supreme Court made a rather detailed analysis of the relevant statutory sections and legislative history to determine that it was the intent of Congress that the benefits under those systems be available to the retiree and that the conflict sufficiently injured the objectives of the Federal programs to require nonrecognition of the community property law.

It is not necessary to recap the details of the *McCarty* analysis because we are not dealing with a Federal law potentially in conflict with a State law requiring consequent nonrecognition due to the supremacy clause. Rather, we are dealing with two acts of the Illinois State legislature passed at different times. The only provision cited by petitioner as evidence of legislative intent is section 15—120 of the Illinois Pension Code. (Ill. Rev. Stat. 1979, ch. 108½, par. 15—120.) That section states that "[a] spouse whose marriage was dissolved shall be disqualified as beneficiary unless the spouse was designated as beneficiary after the effective date of the dissolution of marriage." We find the mere existence of this provision unpersuasive as evidence of legislative intent to absolutely exclude the pension benefits as marital property. Rather, it is more readily inferred that such provision is merely a statutory safeguard of the pensioner's interest by automatically doing what the legislature presumed he would desire, *i.e.*, dropping his divorced spouse as beneficiary.

Since the above arguments fail, we find petitioner's pension was properly classified as marital property.

Petitioner's alternative contention is that the distribution was inequitable, although he acknowledges that equitable does not necessarily mean an equal division. *Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 376 N.E.2d 1382.

■■ The trial court found that at the time of judgment petitioner could apply for a cash refund from the two systems totaling $35,013. Petitioner, who was 54 years old at the time the petition was filed on November 26, 1980, could apply for a monthly retirement annuity of $864 at the age of

55. At 60, he could retire with $1,235 per month. The court noted petitioner testified he intended to continue as a professor of music at the University of Illinois beyond age 60. Mandatory retirement occurs at age 70. All but the first three years of his employment eligibility in the retirement systems were spent during the marriage. That part of the pension attributable to the married years is to be considered as marital property.

The court stated that a present cash refund is not a realistic value of the pension. Respondent's exhibit No. 3 states that an actuarial present value of a monthly annuity of $864 per month is $121,334. The actuarial present value of $1,235 per month is $155,764. The court computed as follows:

> "For age 55 the multiplying fraction which represents the years of marriage into the entire service period is 27/31 of the $864.00 monthly annuity, equals $753.00, one-half to the wife being $376.00 per month. Based upon life expectancy of both sexes for 22.8 years from United States Mortality Tables (of which the court takes judicial notice), the wife's lifetime benefit from the employee husband's pension could be $102,874.00. At age 60 the multiplier becomes 27/36 applied to $1,235.00 monthly annuity, equals $926.00, one-half of which is $463.00 per month, 19 years of life expectancy, spousal lifetime benefit $105,564.00. These computations are only meant to indicate the variance of ways the pension values can be viewed in light of how the court must fairly deal with the distribution of the parties' tangible property and the issue of maintenance in such a manner that takes into account that respondent will not participate in petitioner's retirement fund."

The court did not make a specific finding as to the value of the pension. It merely noted that the grants of other marital property to respondent were in part to offset this pension benefit which would go entirely to the petitioner.

In *In re Marriage of Hunt* (1979), 78 Ill. App. 3d 653, 663, 397 N.E.2d 511, 519, the court stated:

> "The trial court can in some cases determine, by actuarial evidence, the present value of such an interest at the time of divorce. (42 Mo. L. Rev. 143, 149 (1977).) The amount of the pension or profit-sharing interest included as marital property would then be the present value of the interest multiplied by a fraction whose numerator is the number of years (or months) of marriage during which benefits were being accumulated, and whose denominator is the total number of years (or months) during which benefits accumulated prior to divorce. Once the trial court has determined the present value of that part of the pension or profit-sharing interest which is marital property, the trial court may award the

interest to the employee spouse and give the nonemployee spouse other marital property to offset her marital share in the interest. Kalcheim, *Marital Property, Tax Ramifications, and Maintenance: Practice Under the Illinois Marriage and Dissolution of Marriage Act—A Comparative Study*, 66 Ill. B. J. 324, 335 (1978).

In those instances where it is difficult to place a present value on the pension or profit-sharing interest due to uncertainties regarding vesting or maturation, or when the present value can be ascertained but the type, or lack, of other marital property makes it impractical or impossible to award sufficient offsetting marital property to the nonemployee spouse, then the trial court in its discretion may award each spouse an appropriate percentage of the pension to be paid 'if, as and when' the pension becomes payable. (*In re Marriage of Brown* (1976), 15 Cal. 3d 838, 544 P.2d 561, 126 Cal. Rptr. 633; Kalcheim, *Marital Property, Tax Ramifications, and Maintenance: Practice Under the Illinois Marriage and Dissolution of Marriage Act—A Comparative Study*, 66 Ill. B. J. 324, 335 (1978); 42 Mo. L. Rev. 143, 150 (1977).) The marital interest in each payment will be a fraction of that payment, the numerator of the fraction being the number of years (or months) of marriage during which benefits were being accumulated, the denominator being the total number of years (or months) during which benefits were accumulated prior to when paid. The trial court, when using this method of allocation, will retain jurisdiction and award the nonemployee spouse some percentage of the marital interest in each payment. (*In re Marriage of Musser* (1979), 70 Ill. App. 3d 706, 388 N.E.2d 1289; *In re Marriage of Brown* (1976), 15 Cal. 3d 838, 544 P.2d 561, 126 Cal. Rptr. 633; *Cearley v. Cearley* (Tex. 1976), 544 S.W.2d 661.) Placing a present value on the nonvested pension or profit-sharing interest requires a court to take into account the possibility that death or termination of employment may destroy the interest. (*Brown*, 15 Cal. 3d 838, 848, 544 P.2d 561, 567, 126 Cal. Rptr. 633, 639.) Thus, this second method of allocating the interest seems particularly appropriate if the interest has not vested, because it 'divides * * * the risk that the pension will fail to vest.' *Brown*, 15 Cal. 3d 838, 848, 544 P.2d 561, 567, 126 Cal. Rptr. 633, 639."

The trial court below calculated the amount of each monthly payment which would be marital property and divided this amount by one-half to calculate the wife's share. Up to this point, the calculations are the same recommended by the *Hunt* court to determine how much of the currently nonvested pension should be awarded to the nonpensioner spouse "if, as and when payable," thus dividing the risk of failure to vest.

However, the trial court then multiplied the wife's monthly share by her remaining life expectancy. The figure thus obtained as the wife's share of the pension gave her the fullest possible benefit without considering the possibility the pension would not vest or that it might be discontinued for some reason prior to the full life-expectancy term. The distortion resulting from this method is acute. Respondent's exhibit No. 3 states that an actuarial present value of a monthly annuity of $864 was $121,334. 27/31sts of this, or $105,678, was marital property. The wife's share under the above computations was found to be $102,874. Although the court did not make a specific finding as to the value of the pension fund, the distortion in these computations must have affected the property distribution.

■■ If a trial court deems it best to divide the pension interest prior to vesting, it must take the value of the pension as determined by actuarial evidence, discount this amount to an extent in consideration of the probability it will not vest, discount to present value, and then determine the marital portion of that amount. In some cases the trial court may be able to evaluate this risk in determining the value. (*In re Marriage of Brown* (1976), 15 Cal. 3d 838, 544 P.2d 561, 126 Cal. Rptr. 633.) However, generally it will require expert testimony regarding the discount factors and evidence to enable an evaluation of the probability the benefits will be enjoyed. (*Robert C.S. v. Barbara J.S.* (Del. 1981), 434 A.2d 383; *Heatwole v. Heatwole* (Wis. App. 1981), 103 Wis. 2d 613, 309 N.W.2d 380.) This method is best only where the pensioner is close to mandatory retirement age or retirement is otherwise imminent, and there are sufficient other marital assets to allow an offset to the nonpensioner spouse. *Shill v. Shill* (1979), 100 Idaho 433, 599 P.2d 1004.

■■ Where this method proves impractical, the court may choose to postpone a decision on the ultimate method of apportionment of pension rights until the rights vest. This can be accomplished by the court simply awarding "each spouse an appropriate portion of each pension payment as it is paid." This method "will require the court to continue jurisdiction to supervise the payments of pension benefits." (*In re Marriage of Brown* (1976), 15 Cal. 3d 838, 848-49, 544 P.2d 561, 567, 126 Cal. Rptr. 633, 639; *Holbrook v. Holbrook* (1981), 103 Wis. 2d 327, 309 N.W.2d 343; *Robert C.S.*; *Hunt*; *Shill.*) It is especially appropriate here since petitioner's monthly benefits will be dependent upon the number of years of employment at retirement. Petitioner will have attained the age of 55 by at least November 26, 1981. Therefore, on remand it can be determined if the conditions for the interest that would have vested at 55 have been met. Nonetheless, if petitioner retains his position until age 60, his monthly payments would be considerably more than the payments he would receive by retiring earlier. Therefore, the court may deem it best to post-

pone disposition of the pension benefits until it is known whether the larger interest will vest.

We also note that the antiattachment provision in the retirement law is not a bar to this option. In *In re Marriage of Papeck* (1981), 95 Ill. App. 3d 624, 629, 420 N.E.2d 528, 532, the appellate court stated:

> "The spouse of the plan participant, upon dissolution of the marriage, obtains an actual *co-ownership* interest in the benefits as marital property. Thus a divorced wife is not in the position of a mere 'creditor,' and the anti-attachment provision of the Firemen's Act does not bar her claim to a certain proportion of the benefits."

The court concluded that "[i]f present value is too difficult to determine, or if there is a lack of other marital property to award the nonemployee spouse, the trial court has the discretion to allocate to each spouse 'an appropriate percentage of the pension to be paid "if, as and when" the pension becomes payable.' " 95 Ill. App. 3d 624, 630, 420 N.E.2d 528, 532.

We must remand for the trial court to reconsider the method of apportionment. If it is determined the disposition shall include a present offset of property for respondent, the trial court should make a specific finding on the value of the pension benefits. While the possibility that expert testimony may not be necessary to properly value a pension was acknowledged in *Brown*, we believe it the better view that such valuation should be supported by expert testimony.

### Amount of Maintenance

Petitioner next challenges the award of maintenance. Petitioner cites section 504(a) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 504(a)) for the requirements that the court may grant maintenance "only if it finds that the spouse seeking maintenance: (1) lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs, and (2) is unable to support himself through appropriate employment * * *." Petitioner states that respondent is not incapable of finding work. Rather, she was pursuing a Master of Library Science and holds a Bachelor of Music degree. Furthermore, at the time of the proceedings, she restored books at home. Since, in all likelihood, respondent will be able to work and support herself in the future, petitioner contends that the maintenance award was an abuse of discretion in its duration and in that it did not take into account her prospective income.

The court's findings state:

> "The evidence shows that petitioner's income from his earnings at University of Illinois, royalties, and clinics is gross $3,192.00 per month. With deductions his net income is $2,098.00 per month. He itemizes $1,175.00 in expenses each month, leaving $923.00. Re-

spondent's gross income per month is $1,192.00, netting after deductions $816.00. Her expenses are estimated at $1,020.00 per month. Thus, she has a deficit of $204.00 each month. She is undergoing an apprenticeship which should result in an eventual income that matches her living expenses. Again, pension lost to the respondent is a consideration. As and for maintenance, petitioner is ordered to pay to respondent through the Clerk of the Court the sum of $600 per month commencing June 15, 1981 and on the fifteenth of each succeeding month until respondent remarries or becomes deceased."

■■ These figures are not disputed by the parties. The $600 maintenance award leaves petitioner with $323 each month and respondent with $400 each month. While an award of maintenance is merited under section 504, we believe this award is an abuse of discretion. In *Shaver v. Shaver* (1978), 56 Ill. App. 3d 845, 372 N.E.2d 696, the court stated that a party is entitled to alimony depending upon that party's needs and the other party's ability to pay. The comparative needs of respondent and ability of petitioner to pay do not justify the $600 maintenance award. Furthermore, whatever maintenance is granted upon remand will be dependent upon a proper valuation and disposition of the pension rights.

### DURATION OF MAINTENANCE

Regarding the duration of the award, section 504(b) of the Illinois Marriage and Dissolution of Marriage Act states that the maintenance award shall be "for such periods of time as the court deems just * * *." This section does not preclude an amount of maintenance for an indefinite period of time and it is true that the award "should not be based on speculation as to the future conditions of the parties." (*In re Marriage of Pieper* (1979), 79 Ill. App. 3d 835, 845, 398 N.E.2d 868, 875.) Nonetheless, respondent's educational background, present educational pursuits, and income at the time of the proceedings below are not speculation. Although she had a deficit of $204 per month at the time of the proceedings below, it is reasonable to expect her to adjust her situation so that she is able to support herself within a definite time period. Consequently, we also find the award of maintenance for an indefinite period of time to be an abuse of discretion.

### CONTEMPT

■■ On August 19, 1981, a petition for rule to show cause was filed by respondent praying for an order to show cause to be entered against petitioner for failure to pay any of the maintenance payments, or to make other arrangements for settlement in accord with the trial court's order. An order to show cause was issued to petitioner on that same date and a

hearing on the matter was held on September 3, 1981. At the hearing, the court entered judgment in favor of respondent and against petitioner in the sum of $5,745 as money due and owing. It also sentenced petitioner to six months of weekends in the Champaign County jail beginning immediately. In the initial order of periodic imprisonment, the court stated that the sentence may be expunged upon the petitioner's payment of $1,800. On September 4, 1981, the court entered an order stating that respondent was purged of his contempt since he had deposited $1,800 with the clerk.

Petitioner challenges the contempt finding as against the manifest weight of the evidence. He asserts a party "should not be held in contempt for failing to make payments required by a divorce decree unless such failure shows a wilful and contumacious refusal." (*White v. White* (1976), 41 Ill. App. 3d 758, 761, 354 N.E.2d 486.) Petitioner asserts his refusal to pay in this case was not wilful and contumacious, since he did not understand he had to follow the order before his appeal was decided. Therefore, he concludes he was merely mistaken and not acting with the requisite knowledge.

The court order plainly states that "the parties are ordered to execute any and all conveyances and to do any other thing necessary to carry out the provisions herein." It further states that the maintenance was to be paid "commencing June 15, 1981, and on the 15th of each succeeding month * * *." This is not unclear. The finding that petitioner's actions were wilful and contumacious was not against the manifest weight of the evidence.

Petitioner also argues that his failure to pay was not punishable as contempt since he was unable to pay. However, the petitioner did in fact pay the $1,800 in back maintenance payments and purged himself of the contempt on September 4, 1981. The imprisonment order was then expunged. Since he was obviously able to pay, this argument fails. Therefore, we conclude petitioner was properly found guilty of contempt of court.

For the reasons stated, the cause is remanded for reconsideration of the method of apportionment of pension rights and a finding as to the value of those rights if necessary. Apportionment of the remaining marital property, as well as any award of maintenance, must be reconsidered in light of the disposition of pension rights. The contempt finding is affirmed.

Reversed and remanded. Contempt finding affirmed.

WEBBER and LONDRIGAN, JJ., concur.