KAREN DEAN DEWAN vs. EDMOND M. DEWAN.

Middlesex. March 16, 1983. — November 16, 1983.

Present: ARMSTRONG, KAPLAN, & KASS, JJ.

*Divorce and Separation,* Division of property, Pension benefits.

In making an equitable division of property in a divorce case, the judge
erred in finding that the husband's rights under a pension plan were
worth no more than his accumulated contributions to the plan. [99-102]

COMPLAINT for divorce filed in the Middlesex Division of
the Probate and Family Court Department on February 3,
1981.

The case was heard by *Sweeney,* J.

*Sheldon H. Ganz* for Karen Dean Dewan.

*F. Davie Edes* for Edmond M. Dewan.

ARMSTRONG, J. The wife appeals from the property set-
tlement provisions of a divorce judgment, designating as
error the manner in which the judge dealt with the hus-
band's pension rights under his Federal employees' civil
service retirement plan. The wife had adduced the testi-
mony of an actuary to the effect that the present value of the
husband's retirement benefit, if he retired immediately at
age 50, was $275,383; and that if the husband retired in six
years, after he had accumulated 30 years of service, the
present value of his retirement benefits would be $175,803.[1]
The judge, however, found that "the actual value of the
husband's pension plan is that amount of money he presently
has invested in it", which amounted to $34,843.44 at the
time of the trial.

---

[1] Although the pension would be higher after thirty years of service
($23,332 as opposed to $17,456 for present retirement), that augmenta-
tion would be more than offset by the delay in payment and the expecta-
tion of fewer years of pension income.

The property division ordered by the judge, which, based on his findings, would leave the husband with net assets of $114,225 and the wife with net assets of $65,519,[2] could be considered within the range of equal division if one takes into account that the husband was to pay college tuitions and expenses for the children,[3] was to pay the wife $39,500 in alimony over a five-year period,[4] and was to pay medical, dental, and hospital insurance for the children to age 23 and for the wife until 1987.[5] But the apparent symmetry, if that was intended, depends on the correctness of the judge's finding that the husband's rights under the pension plan were to be measured by his accumulated contributions, because the judge did not provide for an apportionment of pension income when (and if) received but treated the pension rights, valued in the manner stated, as an asset to be retained by the husband and charged to him in making the distribution of property. The difference between the maxi-

[2] This calculation omits household furnishings and subtracts each party's liabilities from his assets. As to furnishings, there was put in evidence the report of an appraiser who had been asked to assign a value to items thought to be of special or antique value. He assigned a total of $29,854 to such items. The judgment apportioned those items between the parties in the ratio of $21,329 to the husband and $8,525 to the wife. The wife complains of the discrepancy, but two major factors suggest there is in fact no discrepancy in the husband's favor: first, the husband's total includes a "soft" component, $10,000 assigned to his books and magazines, valued at replacement cost rather than market value; and, second, the wife was given all household furnishings not listed in the appraisal. The appraisal included three tables and one rug, but no beds, lamps, appliances (refrigerator, stove, television, etc.), kitchen utensils, linens, or the like. Unless the house is an empty shell, the discrepancy is almost certainly in the wife's favor.

[3] At the time of trial in August, 1981, one of the children was entering his junior year at Brown University and the other was entering his freshman year at Oberlin College. Provision was made for contribution by the wife if her salary should come to exceed $15,000, in which event the parties were to divide college expenses in proportion to their gross incomes. The husband's salary at the time of trial was $46,696 per annum.

[4] $250 per week in 1982, $200 per week in 1983, and $100 per week in 1984, 1985, and 1986.

[5] The insurance coverage for the wife was to terminate earlier if she should exceed an income of $15,000.

mum value of the pension rights as testified to by the actuary and the value as found by the judge exceeded the value of all the parties' other assets combined; thus we cannot assume that the question was immaterial in formulating the division of property.

Given the general circumstances of the parties, and without in any way impugning the validity of the actuary's calculation, the judge could properly reject the testimony which valued the husband's pension rights at $275,383. On stated assumptions which seemed generally reasonable, the actuary determined that amount to be the value of the husband's pension rights if he should retire forthwith.[6] But there was no testimony tending to support an assumption that the husband might accept retirement before he should become eligible for the full monthly retirement benefit after thirty years of service. There can be and usually are reasons for working other than to maximize gross pension benefits, the need for higher current income to pay tuition bills being an obvious example applicable to this case. There is also, perhaps, reason to doubt whether retirement at full pension after thirty years of service is in this case an appropriate assumption on which to calculate the present value of prospective pension rights.[7] At that time the husband would be only fifty-six years old. On the other hand, it seems still less realistic to limit the valuation of the pension rights to the

---

[6] There is an important gap in the evidence at this point: there was no testimony or other evidence as to whether the husband had the option under the pension plan to retire forthwith without forfeiting pension rights. Extra-record material furnished by the wife suggests that the husband is ineligible for a voluntary retirement pension before age 55 but would receive a pension prior to age 55 on involuntary retirement. See note 7, *infra*.

[7] The husband's brief asserts, without record reference, that his retirement date is 1994, when, according to the record, he should be approximately 64 years old. It was assumed at trial that he would be eligible for retirement at full pension at age 55 after 30 years of service, and no assertion to the contrary was then raised by the husband or his counsel. We assume that such is the fact for purposes of this decision, observing that evidence can and should be adduced on this point in the course of further proceedings in the Probate Court on remand. See n.6.

accumulated contributions; for it is clear from the evidence that the husband's accumulated contributions, if they were the sole source of his pension, would be exhausted in roughly two years of pension payments at the levels indicated by the evidence at whatever time he should retire. The judge could properly reject the two figures offered by the actuary as inappropriate measures of the husband's pension rights, but it was clearly erroneous to find that the pension rights were worth no more than the accumulated contributions.[8] The cases on this point — mainly from community property States — are in accord. See *Phillipson* v. *Board of Admin. Pub. Employee Retirement Sys.*, 3 Cal. 3d 32, 48 (1970) ("The actuarial value of a life pension usually far exceeds the amount of the employee's accumulated contributions plus interest"); *Copeland* v. *Copeland*, 91 N.M. 409 (1978); *Minnis* v. *Minnis*, 54 Or. App. 70 (1981).

The wife argues that the judge was required to accept, for want of better evidence, the actuary's testimony as to the value of the pension rights and to allocate a portion of that value presently to the wife by way of equitable division. Where an actuary's valuation is accepted as a reasonable approximation of present value, division of the asset value of the pension rights at the time of divorce is often unrealistic. The actuarial value of a pension is not a liquid asset, and the spouses may not have other, more liquid assets of comparable value. Compare *Kikkert* v. *Kikkert*, 177 N.J. Super. 471, 478 (1981); *Copeland* v. *Copeland*, 91 N.M. at 414; *Holbrook* v. *Holbrook*, 103 Wis. 2d 327 (1981). But even in such circumstances, the court may presently divide the asset, making the apportionment to the nonretiring spouse effective if, as, and when the benefits are received by the retiring spouse. See *Cearley* v. *Cearley*, 544 S.W. 2d 661, 666 (Tex. 1976); *Hunt* v. *Hunt*, 78 Ill. App. 3d 653, 663 (1979); *Kikkert* v. *Kikkert, supra*; *Rogers* v. *Rogers*, 45 Or. App. 885

---

[8] Such would not be the case, of course, if the pension rights were vested and there was evidence that the employee was likely to shift employment and withdraw accumulated contributions. There was no such evidence in this case.

(1980); *Majauskas* v. *Majauskas*, 110 Misc. 2d 323, 326 (N.Y. Sup. Ct. 1981).

The same form of division of future benefits may be dictated by the difficulty of assigning a present asset value due to contingencies. "In dividing nonvested pension rights . . . the court must take account of the possibility that death or termination of employment may destroy those rights before they mature. In some cases the trial court may be able to evaluate this risk in determining the present value of those rights. . . . But if the court concludes that because of uncertainties affecting the vesting or maturation of the pension that it should not attempt to divide the present value of pension rights, it can instead award each spouse an appropriate portion of each pension payment as it is paid. This method of dividing the community interest in the pension renders it unnecessary for the court to compute the present value of the pension rights, and divides equally the risk that the pension will fail to vest." *Brown* v. *Brown*, 15 Cal. 3d 838, 848 (1976).

Where the division is made to apply to pension benefits when received, the award is typically of a percentage (often a third or a half) of that portion of the pension benefits attributable to the period of the marriage. The portion attributable to the period of the marriage is generally determined by multiplying the net pension benefit by a fraction, the numerator of which is the time period during which retirement benefits were accrued during the marriage and the denominator of which is the total period of accrual. See, e.g., *Hunt* v. *Hunt*, 78 Ill. App. 3d at 663; *Foster* v. *Foster*, 589 S.W. 2d 223, 224-225 (Ky. App. 1979); *Majauskas* v. *Majauskas*, 110 Misc. 2d at 327-328. Another possibility would be to determine the fraction according to the percentage of the retiring spouse's contributions that were made during the period of the marriage.

Where it is appropriate to include pension rights in an equitable division, the determination whether to assign a percentage of present value as a property asset or to allocate benefits if and when received lies largely within the discre-

tion of the judge. Where the spouses are far from retirement age and the marriage is of short duration, present assignment as property may be feasible by reason of the fact that the prospective pension has little present value due to long deferred receipt and because the nonretiring spouse's appropriate share of pension benefits when paid would be confined by the brevity of the marriage.[9] Where the marriage has been of long duration and retirement age is more proximate, the greater value of the prospective pension benefits may make present assignment as an asset unfeasible, at least in the absence of other significant assets,[10] or the valuation of pension rights may be unduly speculative, especially where they are subject to destruction by premature death or termination of employment. The appropriate method of dealing with pension rights in the context of equitable division must be determined by the circumstances of the particular case, and in this case must be determined by the judge on remand.

The other matters argued by the wife do not warrant extended discussion. She correctly points out several instances of figures used by the judge in his calculations which deviate from those supported by the evidence, but the differences are not such as to suggest that they would significantly affect the outcome. Possible exceptions, such as the handling of accumulated sick leave in calculating retirement benefits, can be reconsidered on remand. The husband's liability on the education loans can also be elucidated on remand; and the updating of the testimony on this point (educational expenses) is especially desirable, because four and a half of the six years of college tuitions which were in prospect at the time of trial are presumably now past history and may be accounted for definitively. Despite the wife's most ardent

[9] In such cases it may not be inappropriate to value the pension rights by any accumulated contributions refundable on voluntary termination.

[10] It is not inconceivable in this case that the husband's share of the house (forty-five percent under the judgment appealed from) could approximate in value any share which may be accorded to the wife in a division of pension rights as a present (albeit contingent) property asset.

Dewan *v.* Dewan.

pleas, we cannot say the judge erred in finding that she had significant earning potential as a lawyer; but here, again, the intervening two years since trial may furnish more evidence on the point.

For the reasons stated, the equitable division portion of the judgment nisi is reversed, and the case is remanded to the Probate Court for reconsideration thereof in the light of this opinion and any further evidence that may be received. The judgment nisi is otherwise affirmed, provided, however, that the alimony provision of that judgment may be amended by the judge in light of his reconsideration of the property division.

*So ordered.*