MARGIE S. SEIFERT v. PAUL J. SEIFERT

No. 8612DC2

(Filed 5 August 1986)

**1. Divorce and Alimony § 30— equitable distribution—pension rights—method of evaluation and distribution**

When evaluating and distributing pension and retirement benefits for equitable distribution, the trial court may properly consider the advantages and disadvantages of the present discounted value method and the award of a

fixed percentage of future payments; whether one or the other method is appropriate is in the discretion of the trial court and should be based on the facts and circumstances of each case. N.C.G.S. § 50-20(k), N.C.G.S. § 50-20(b)(3).

**2. Divorce and Alimony § 30— equitable distribution—pension benefits—erroneously determined**

The trial court erred in an equitable distribution action in its order of evaluation and distribution of defendant's vested military pension and benefit rights by impermissibly utilizing a present value and ordering a deferred payment.

**3. Divorce and Alimony § 30— equitable distribution—pension rights—evidence of pay rate at date of trial excluded—no error**

The trial court did not err in an equitable distribution action by refusing to allow into evidence the amount of defendant's base pay at the date of trial. N.C.G.S. § 50-21(b) requires that marital property be valued as of the date of separation when the parties are divorced on the ground of one year separation.

Chief Judge HEDRICK dissenting.

APPEAL by plaintiff from *Keever, Judge.* Judgment entered 13 September 1985 in District Court, CUMBERLAND County. Heard in the Court of Appeals 14 May 1986.

Plaintiff Margie Seifert and defendant Paul Seifert were married on 30 June 1961, separated on 11 September 1983 and divorced in March of 1985. On 3 September 1985 a hearing was had on plaintiff's request for an equitable distribution of the marital property. Both parties presented evidence as to the existence and value of the marital property. Most of the evidence presented dealt with the existence and value of the parties' individual pension and retirement benefits. From 1973 through the date of separation plaintiff was employed as a car salesperson with Stewart Oldsmobile in Fayetteville. From September 1958 through the date of separation defendant served in the United States Army. As of the date of separation, both parties' pensions and retirement rights were vested and pursuant to G.S. 50-20(b)(1) the trial court properly included them as marital property.

The parties stipulated that plaintiff's pension and retirement benefits connected with her employment at Stewart Oldsmobile had a total value at the time of separation of $43,284.07. That amount included $12,787.89 of voluntary contributions by the plaintiff. The value of her pension and retirements benefits is not disputed.

The trial court valued defendant's pension and retirement benefits based on defendant's basic pay at the date of separation of $1,780.00 per month. The trial court determined that had the defendant retired when he and the plaintiff separated, he would have been entitled to receive 62½% of his basic pay or a total of $1,112.50 per month. Pursuant to G.S. 50-20(b)(3) the trial court determined that as of the date of separation defendant had served 24 years and 11 months in the United States Army of which 22 years and 3 months were served while defendant was married to plaintiff. From these figures the trial court determined that 87½% of defendant's pension and retirement benefits were earned during the marriage. Using a life expectancy for defendant of 25.5 years and a rate of investment return of 10%, the trial court computed the present lump sum value of defendant's pension and retirement benefits, as of the date of separation, to be $108,491.60 and included the full amount as marital property.

The trial court concluded as a matter of law that an equal division of the marital property would be equitable. The value of the marital property totaled $194,250.67. The trial court awarded to plaintiff the full amount of her vested pension, $43,284.07, an amount undisputed by the parties. In reaching an equal division of the marital property, the trial court also awarded to the plaintiff the sum of $20,966.26 as plaintiff's portion of the present value of defendant's vested military pension. The trial court ordered that the sum of $20,966.26 would be distributed to the plaintiff in monthly installments of $188.07 from defendant's disposable retired pay at the time the defendant actually begins to receive his retirement pay. From the trial court's judgment establishing valuation and providing for disbursement of defendant's pension and retirement benefits, plaintiff excepts and appeals.

*McLeod, Senter & Winesette by William L. Senter for plaintiff-appellant.*

*Blackwell, Swaringen & Russ by John Blackwell, Jr. and Margaret R. Russ for defendant-appellee.*

EAGLES, Judge.

By her two assignments of error, plaintiff contends that the trial court erred in valuing and distributing defendant's military pension and retirement benefits. Plaintiff's primary argument is

that the trial court erred in valuing defendant's pension as of the date of separation. Specifically, plaintiff argues that the trial court erred in using defendant's base pay *at the time of separation* in calculating the amount of retirement income to be designated as marital property and in refusing to allow into evidence defendant's base pay at the date of trial.

The division of marital property under G.S. 50-20 is a matter within the sound discretion of the trial court and "where matters are left to the discretion of the trial court, appellate review is limited to a determination of whether there was a clear abuse of discretion. [Citations omitted.] A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason." *White v. White*, 312 N.C. 770, 777, 324 S.E. 2d 829, 833 (1985). We have carefully reviewed the evidence of record and reluctantly conclude that the trial court erred and abused its discretion in its order of valuation and distribution of defendant's vested military pension and retirement benefits.

Our equitable distribution statutes, G.S. 50-20 and -21, provide for the equitable distribution of the marital property following a decree of absolute divorce. G.S. 50-20(a)(1) defines marital property as including "all vested pensions and retirement rights, including military pensions eligible under the federal Uniformed Services Former Spouses' Protection Act." The rights of the parties to an equitable distribution of the marital property vest at the time the action for divorce is filed, G.S. 50-20(k); however, if the divorce is granted on the ground of one year separation, the marital property must be valued as of the date of separation. G.S. 50-21(b). The plaintiff and defendant here were divorced on the ground of one year separation. G.S. 50-6. Therefore, defendant's vested military pension and retirement benefits must be valued as of the date of separation.

Most pension and retirement plans can be described as falling within two categories: defined contribution plans and defined benefit plans. B. Goldberg, Valuation of Divorce Assets Section 9.2 (1984). A defined contribution pension is essentially an annuity funded by periodic contributions. At retirement the funds purchase an annuity for the rest of the employee's life or an actuarily reduced pension for the lives of the employee and spouse. 2 Valuation and Distribution of Marital Property Section 23.02[1][b] (J.

McCahey ed. 1985). A defined contribution pension may be nominally funded by the employee, the employer or both. Realistically, the employee funds his own pension whether he or his employer is the nominal payor because the burden of the employer's contribution is passed directly to the employee in the form of reduced wages. *Id.* at Section 23.02[1][a]. Accordingly, pensions are characterized as "deferred compensation," for without the pension it is assumed that the employee would have received a commensurately greater salary during his working years. *Id.*

In a defined benefit plan the employee's pension is determined without reference to contributions and is based on factors such as years of service and compensation received. Goldberg, *supra.* Some plans combine both defined contribution and benefit elements. For example, federal and many state civil service pensions are often nominally funded by both employer and employee. If the employee terminates employment before retirement, he receives a refund of his contribution. If he remains until retirement, he receives benefits based on his pre-retirement salary. 2 Valuation and Distribution of Marital Property Section 23.02[1][b] (J. McCahey ed. 1985).

Defendant's military pension and benefits fall within the category of defined benefit plans. The military retirement system is noncontributory, funded by annual appropriations from Congress and administered by the Department of Defense. *McCarty v. McCarty*, 453 U.S. 210, 69 L.Ed. 2d 589, 101 S.Ct. 2728 (1981). Vesting does not occur until a member has served a minimum prescribed period, currently twenty years for a commissioned officer, 10 U.S.C. Section 3911 and 30 years for an enlisted member, 10 U.S.C. Section 3917. Military retirement pay commences at the time of retirement with the amount calculated on the basis of years served and rank achieved by a statutorily provided formula: (basic pay, based on the retired grade and years of service of the member) x (2½%) x (the number of years of creditable service). 10 U.S.C. Section 3991. *See McCarty, supra.* At twenty years service the eligible retiree is entitled to at least 50% of his basic pay. (Excluding special pay and allowances.) However, 75% of basic pay is the maximum amount permitted—the percentage attained upon completion of 30 years service (30 years x 2½%) —regardless of the number of years served. 10 U.S.C. Section 3991. *See McCarty, supra* n. 7. If a member terminates his service

before twenty years the entitlement to retirement pay is for-feited. Military retirement pay terminates at the retiree's death and does not pass to his heirs. However, a retiree may designate a beneficiary to receive any arrearages due but unpaid at his death. *McCarty, supra.* 10 U.S.C. Section 2771.

In applying our equitable distribution statutes the trial court must follow a three-step procedure, (1) classification, (2) evaluation and (3) distribution. *Cable v. Cable,* 76 N.C. App. 134, 331 S.E. 2d 765, *disc. rev. denied,* 315 N.C. 182, 337 S.E. 2d 856 (1985). For many divorcing couples pension and retirement benefits comprise a major portion of the marital property. 2 Valuation and Distribu-tion of Marital Property at Section 23.02[1]. We recognize that trial courts are faced with a complex task in valuing and distrib-uting pension and retirement benefits between former spouses. G.S. 50-20(b)(3) provides some guidance with respect to distribu-tive awards of these assets, but the division of marital property is a function left largely to the sound discretion of the trial court. *White, supra.* Given the breadth of the trial court's discretion in this area, we can do no more than point out fundamental errors and make some general observations as to the appropriate meth-ods of valuation and distribution.

[1]  There are two primary methods utilized by courts of other jurisdictions in evaluating and distributing pension and retire-ment benefits. The first method is the present discounted value method. There the trial court calculates, using actuarial evidence, the present value of the vested pension, as of the date of separa-tion (if the parties were divorced on the ground of one year sepa-ration (G.S. 50-21(b) ) ), discounted for interest in the future and taking into account the employee spouse's life expectancy. The trial court would further have to compute the percentage of pres-ent value attributable to the marriage period (the time between date of marriage and date of separation) and the appropriate equitable share to which the nonemployee spouse is entitled. *In re Marriage of Hunt,* 78 Ill. App. 3d 653, 397 N.E. 2d 511 (1979); *Bloomer v. Bloomer,* 84 Wis. 2d 124, 267 N.W. 2d 235 (1978); *see also Johnson v. Johnson,* 131 Ariz. 38, 638 P. 2d 705 (1981); *In re Marriage of Skaden,* 19 Cal. 3d 679, 139 Cal. Rptr. 615, 566 P. 2d 249 (1977); *In re Marriage of Wisniewski,* 107 Ill. App. 3d 711, 437 N.E. 2d 1300 (1982); *Deering v. Deering,* 292 Md. 115, 437 A. 2d 883 (1981); *Dewan v. Dewan,* 17 Mass. App. 97, 455 N.E. 2d 1236

(1983); *Kis v. Kis,* --- Mont. ---, 639 P. 2d 1151 (1982); *Kullbom v. Kullbom,* 209 Neb. 145, 306 N.W. 2d 844 (1981); and *Damiano v. Damiano,* 94 A.D. 2d 132, 463 N.Y.S. 2d 477 (2d Dept. 1983). This type of valuation can be somewhat speculative because, depending on the facts and circumstances, it may necessarily involve consideration of various uncertainties. *In re Marriage of Brown,* 15 Cal. 3d 838, 126 Cal. Rptr. 633, 544 P. 2d 561, 94 A.L.R. 3d 164 (1976); *accord Dewan, supra* and *Deering, supra; see also Holbrook v. Holbrook,* 103 Wis. 2d 327, 309 N.W. 2d 343 (1981).

In *Dewan, supra,* the usefulness of the present discounted value method is discussed, though it is referred to as "present assignment as property":

> Where the spouses are far from retirement age and the marriage is of short duration, present assignment as property may be feasible by reason of the fact that the prospective pension has little present value due to long deferred receipt and because the nonretiring spouse's appropriate share of pension benefits when paid would be confined by the brevity of the marriage. Where the marriage has been of long duration and retirement age is more proximate, the greater value of the prospective pension benefits may make present assignment as an asset unfeasible, at least in the absence of other significant assets, or the valuation of pension rights may be unduly speculative, especially where they are subject to destruction by premature death or termination of employment.

*Dewan, supra,* 455 N.E. 2d at 1240. *See also Robert C.S. v. Barbara J.S.,* 434 A. 2d 383 (Del. S.Ct. 1981); *but see Wisniewski, supra.* When the present discounted value method is used, the trial court orders *immediate* distribution of the nonemployee spouse's share. This is accomplished by an immediate lump sum payment, by payments prior to retirement in installments with interest or by the redistribution of other marital property. *Bloomer, supra; Damiano, supra;* and *Wisniewski, supra.*

There are several advantages to present discounted valuation with immediate distribution. For example, with present valuation the nonemployee spouse receives present, existing assets when they are most needed, and avoids the risk of adverse financial consequences if the employee spouse quits, is fired, dies or becomes disabled. Present valuation terminates litigation sooner

and avoids the continuation of potentially acrimonious relationships, gives the nonemployee spouse use of cash or other marital assets in exchange for the *in futuro* retirement benefits and gives the nonemployee spouse assets otherwise subject to testamentary disposition. Present valuation precludes the nonemployee spouse from unfairly sharing in post-separation promotions or increases in pay which are separate property and which may generate higher pensions. *Goldberg, supra* at Section 9.5.

The major disadvantage of the present value method is that the employee spouse bears the risk of paying the nonemployee spouse for rights that may never mature. *Johnson, supra.* Additionally, the employee spouse may feel cheated because he or she receives only an expectancy of benefits while the nonemployee spouse gets present "real" assets such as home equity, stocks or cash payment. *Id.*

The second method of valuation and distribution widely used by other jurisdictions allows the court to award to the nonemployee spouse a fixed percentage of any future payments the employee spouse receives under the plan, payable to the nonemployee spouse as, if and when the benefits are received. *Dewan, supra; Majauskas v. Majauskas,* 110 Misc. 2d 323, 441 N.Y.S. 2d 900 (1981), *modified,* 94 A.D. 2d 494, 464 N.Y.S. 2d 913 (1983); *Bloomer, supra. See also, Skaden, supra; Jerry L.C. v. Lucille H.C.,* 448 A. 2d 223 (Del. S.Ct. 1982); *Hunt, supra;* and *King v. King,* 332 Pa. 526, 481 A. 2d 913 (1984). Under this method, the trial court need not determine present value of the pension. All the court must do is to determine the percentage to which the nonemployee spouse is entitled. *Brown, supra. See also Bloomer, supra, Deering, supra,* and *Kullbom, supra.* When utilizing this evaluation and distribution method, the court should award to the nonemployee spouse a percentage of that portion of the pension benefits attributable to the marriage period. The portion attributable to the marriage is determined by multiplying the net pension benefits by a fraction, the numerator of the fraction being the total period of time the employee spouse was a participant in the plan within the marriage period (from date of marriage to date of separation) and the denominator being the total period of the employee spouse's participation in the plan. *King, supra* and *Dewan, supra. See also Hunt, supra; Majauskas, supra.*

We believe that this second method is consistent with G.S. 50-20(b)(3) which provides that the distributive award of vested pension and retirement benefits may be payable "[a]s a prorated portion of the benefits made to the designated recipient at the time the party against whom the award is made actually begins to receive the benefits." The statute requires that the award not be based on contributions made *after* separation. This requirement is fulfilled by determining the nonemployee spouse's fixed percentage as of the date of separation. The statute also states that the award *shall* include any growth on the amount of the pension or retirement account vested at the time of separation. We believe that this method also provides for any "growth" on the amount of the vested pension or retirement benefits because the nonemployee spouse will receive a fixed percentage of the benefits actually received by the employee spouse at retirement. We note further, however, that G.S. 50-20(b)(3) specifically limits a nonemployee spouse's award to 50% of the cash benefits received by the employee spouse.

There are also some advantages to utilizing the deferred division of benefits on a fixed percentage basis as, if and when the benefits are received. This method of evaluation and distribution avoids any risk of paying the nonemployee spouse for rights which, due to intervening events, may not in fact mature. *Goldberg, supra* at Section 9.5.

> Reserving jurisdiction over the future benefits in affecting [sic] a subsequent division of the actual monetary benefits [has] the dual advantage of allocating equally between the parties the risk that the rights may never vest [or mature] and enabling the court to better determine the actual proportion of future benefits that accrued to each party during the marriage.

*Goldberg, supra* at Section 9.5 n. 3. Using this method the nonemployee spouse is permitted to share in the increases in retirement benefits due to post-separation efforts which were built on the foundation of marital effort. Further, this method avoids prolonging the hearing with complicated actuarial evidence and costly expert testimony. *Goldberg, supra.* One writer suggests that the use of deferred distribution is preferred in circumstances where it is difficult to presently value the pension or retirement rights due

to uncertainties in vesting or maturation or where the present value is ascertainable but the type, or lack of, marital property involved makes it impractical to order immediate distribution. *Goldberg, supra* at Section 9.5 n. 3. In deciding which method of evaluation and distribution of retirement benefits should be adopted, the trial court may properly consider the advantages and disadvantages of each.

Equitable distribution reflects the idea that marriage is a partnership enterprise to which both spouses make vital contributions and reflects the strong public policy favoring the equal division of marital property unless equal division is not equitable. *White, supra.* Fairness and equity should guide the trial court in deciding how to evaluate and distribute marital property. Whether one or the other of these methods is appropriate is left to the discretion of our trial courts and should be decided based on the facts and circumstances of each case.

[2] Here the trial court made a determination of the present value of the pension ($108,491.60) as of the date of separation and awarded a portion of that value ($20,966.26) to the plaintiff. In distributing the presently valued award the trial court ordered that the actual payment of this amount would be deferred until the pension entered pay status, payable in monthly amounts of $188.07. We have concluded that the method used to divide the pension was faulty in that the trial court impermissibly utilized a present value in ordering a deferred payment. See *King v. King, supra.* This, in effect, operated as a double reduction: plaintiff received a *discounted* value for immediate distribution but nevertheless was required to wait to receive payment until, if and when, the defendant reached retirement and began receiving benefits.

[3] Plaintiff contends that the trial court erred when it refused to allow into evidence the amount of defendant's basic pay at the date of trial. Plaintiff asserts that the trial court should have presently valued defendant's military pension using defendant's basic pay at the date of trial and not defendant's basic pay at the date of separation. Plaintiff's offer of proof shows that the amount of defendant's basic pay at trial was substantially higher than his basic pay at separation. G.S. 50-21(b) *requires* that marital property be valued as of the date of separation when, as here, the par-

ties are divorced on the ground of one year separation. The trial court correctly used the present value of defendant's military pension, as of the date of separation.

In summary the trial court erred and abused its discretion when, after properly choosing in its discretion to use the present value evaluation method, it impermissibly postponed or deferred payment instead of ordering immediate payment.

Accordingly the order is vacated and the case is remanded for further proceedings in light of this opinion and any further evidence that may be received.

Vacated and remanded.

Judge COZORT concurs.

Chief Judge HEDRICK dissents.

Chief Judge HEDRICK dissenting.

I disagree with the majority's conclusion that the trial court "erred and abused its discretion" in failing to order immediate payment of vested pension benefits. G.S. 50-20(b)(3) provides that vested pension rights may be distributed in one of three ways: "a. As a lump sum *by agreement*; b. Over a period of time in fixed amounts *by agreement*; or c. As a prorated portion of the benefits made to the designated recipient *at the time the party against whom the award is made actually begins to receive the benefits.*" (Emphasis added.) The record before us contains no evidence that the parties have reached agreement about distribution under (a) or (b) above. Consequently, the trial judge had no authority to order immediate payment of benefits. Indeed, any such action by the trial court would have been in direct violation of G.S. 50-20(b)(3).

While I recognize that the balance of the majority opinion is dicta, I feel it necessary to point out that the second valuation method discussed and approved by the majority is inconsistent with both statutory and case law in this state. Our law provides that the trial court must identify marital property, ascertain its net value, and then equitably distribute the property. *Cable v. Cable*, 76 N.C. App. 134, 331 S.E. 2d 765, *disc. rev. denied*, 315

In re Manus

N.C. 182, 337 S.E. 2d 856 (1985). The court must value the marital property *as of date of separation*, G.S. 50-21(b), and failure to do so is reversible error. *Alexander v. Alexander*, 68 N.C. App. 548, 315 S.E. 2d 772 (1984). Valuation is a prerequisite to distribution. *Turner v. Turner*, 64 N.C. App. 342, 307 S.E. 2d 407 (1983). In short, our law requires the trial court to value marital property as of date of separation even when valuation is difficult and the results necessarily speculative. The advantages of distributing without valuing this particular type of marital property are set out in considerable detail in the majority opinion. Despite these advantages, however, this is a course our law does not allow.

I vote to affirm the ruling of the trial court.