IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-930

Filed 2 July 2025

Gaston County, No. 23CVD000415-350

TRACY LYNN GREEN, Plaintiff,

v.

ROBERT LYNN GREEN, Defendant.

Appeal by Defendant from order entered 24 May 2024 and judgment entered 18 June 2024 by Judge Edgar F. Bogle in Gaston County District Court. Heard in the Court of Appeals 9 April 2025.

*King Law Offices, by Claudette B. Ericson and Patrick K. Bryan, for Defendant-Appellant.*

*No brief for Plaintiff-Appellee.*

COLLINS, Judge.

This case arises from a dispute between former spouses, Robert Lynn Green ("Defendant" or "Husband") and Tracy Lynn Green ("Plaintiff" or "Wife"), over the division of Defendant's military pension in accordance with their Separation and Property Settlement Agreement. Defendant appeals from the trial court's Military Pension Division Order and subsequent Declaratory Judgment. We affirm both.

## I. Background

Plaintiff and Defendant were married on 29 July 1995 and separated about

thirteen-and-a-half years later, on 29 December 2008. During their marriage, Defendant spent at least ten years on active duty with the United States Military. The parties executed a Separation and Property Settlement Agreement on 30 January 2009 resolving all issues of property division. The Agreement provided for a division of Defendant's military pension and retirement benefits and a court order to effectuate that division. The Agreement further provided that it shall be construed in accordance with North Carolina law:

<u>PROPERTY SETTLEMENT</u>

. . . .

5. HUSBAND'S RETIREMENT BENEFITS: <u>Military Retirement</u>: The parties acknowledge that Husband is entitled to Pension and Retirement benefits as a result of his service in the military. The parties also acknowledge and agree that Wife is entitled to 50% of Husband's benefits accumulated during the course of the marriage. Said benefits shall be payable to Wife upon Husband's retirement. Wife shall be responsible for preparing the appropriate paperwork to secure the transfer of military pension and retirement benefits.

. . . .

**OTHER PROVISIONS**

. . . .

4. GOVERNING LAW. This Agreement shall be construed in accordance with and governed by the laws of the State of North Carolina, entirely independent of the forum where the parties now reside or where it may come up for construction or enforcement.

The parties divorced on 22 February 2010. At some point thereafter, Defendant retired from the military and became entitled to receive his military benefits. Plaintiff filed a Complaint for Entry of Military Pension Division Order on 3 February 2023, asking the court to enter a Military Pension Division Order dividing Defendant's pension and retirement benefits in conformity with the Agreement.

Defendant filed an Answer and Counterclaim on 30 May 2023. In this filing, Defendant: 1) moved pursuant to Rule 12(b)(6) to dismiss Plaintiff's Complaint because it "seeks specific performance of distribution" and "[s]pecific performance is not an adequate remedy to effectuate the claim asserted"; 2) "specifically denied that Plaintiff is entitled to retirement benefits"; and 3) moved for declaratory judgment, requesting the court to interpret the "patent ambiguities" in the Agreement "in favor of the Defendant to define the amount, if any, that the Plaintiff shall be entitled to recover."

Plaintiff's Complaint for Entry of Military Pension Division came on for hearing on 14 June 2023. On that date, the parties entered into a Memorandum of Judgment/Order wherein they agreed to exchange certain information including each party's "proposed calculation in conformity with the parties' Separation Agreement" and "any documentation necessary to understand said calculation." Upon this exchange, either party could notice the matter back on for hearing. On 20 July 2023, Plaintiff calendared her Complaint for Entry of Military Pension Division back on for hearing on 24 August 2023.

Defendant filed a Motion for Summary Judgment on 14 August 2023, alleging that the Agreement was "*void ab initio*" because it "was not certified by both parties before a certifying officer" and asking the Court to "summarily deny Plaintiff's claim for entry of a division order by entering summary judgment in favor of Defendant." Defendant also filed an Amended Counterclaim on that date, requesting that the court "enter a declaratory judgment fixing the amount of any pension benefits to which [Plaintiff] may be entitled – any such benefit specifically being limited to any benefits Defendant accumulated during the parties' marriage." Also on 14 August 2023, Defendant calendared his Motion for Declaratory Judgment and Motion for Summary Judgment for hearing.

Defendant withdrew his Motion for Summary Judgment four days later, on 18 August 2023. The record is silent as to what took place between 18 August 2023 and 17 April 2024.

On 17 April 2024, Plaintiff filed a request for a hearing on her Complaint for Entry of Military Pension Order. After a hearing on 24 May 2024, the trial court entered a Military Pension Division Order. The trial court awarded Plaintiff twenty-one percent of Defendant's disposable military retired pay and ordered Defendant to promptly provide Plaintiff with any information she needed to ensure direct payment to her of those military pension benefits.

On 18 June 2024, the trial court entered a Declaratory Judgment declaring the meaning of paragraph 5 of the Agreement and the method used to divide Defendant's military retirement. The trial court found, in part, as follows:

11. Defendant (Husband) contends that the Agreement fixes the amount of any pension benefits to which Plaintiff may be entitled to only any such benefit the Defendant accumulated during the parties' marriage, and that anything more unduly accounts for his post marriage service.

12. Plaintiff (Wife) contends that she is entitled to twenty-one percent (21%) of the member's disposable military retired pay - a figure calculated by using a coverture fraction that includes the following variables:

   a. total military retirement points earned by Defendant;

   b. Defendant's present disposable military retirement pay; and

   c. the amount of military retirement points Defendant earned during the course of the marriage.

13. Plaintiff argued such a coverture fraction was appropriate because the "Frozen Benefit Rule" did not apply at the time the parties were divorced.

14. Defendant argued the prior state of Equitable Distribution law is inapplicable in this case because the case at hand is a contract analysis case.

Upon its findings and conclusions, the trial court decreed as follows:

1. Because the Agreement between the parties was entered into prior to December 23, 2016, the clear and unambiguous meaning of paragraph five (5) of the Agreement indicates that the Plaintiff is entitled to a calculation of a percentage of the Defendant's

retirement pension pursuant to a coverture fraction using as its variables: Defendant's present disposable military retirement pay; Defendant's total military retirement points; and those military retirement points Defendant accumulated during the course of the parties' marriage.

2. Plaintiff, pursuant to the Agreement, is entitled to twenty-one percent (21%) of the Defendant's disposable military retired pay.

Husband appealed both the Military Pension Division Order and the Declaratory Judgment on 20 June 2024.

## II. Discussion

The essence of Defendant's arguments is that the trial court erred in its calculation of Plaintiff's portion of Defendant's military pension and retirement benefits.

Parties to a divorce may provide for the division of retirement benefits as part of a separation agreement. *See* N.C. Gen. Stat. § 50-20(d) (2009). A separation agreement that has not been incorporated into a divorce judgment is "governed by general contract principles" and is "enforceable and modifiable only under such principles." *Long v. Long*, 160 N.C. App. 664, 668 (2003) (citation omitted). "Whenever a court is called upon to interpret a contract its primary purpose is to ascertain the intention of the parties at the moment of its execution." *Lane v. Scarborough*, 284 N.C. 407, 409-10 (1973) (citations omitted). "The most common rule of construction used by the courts is to gather the intention of the parties from

the four corners of the instrument." *Hamby v. Hamby*, 143 N.C. App. 635, 646 (2001) (quotation marks and citations omitted). "Where a contract is unambiguous, its construction is a matter of law for the court to determine." *Gilmore v. Garner*, 157 N.C. App. 664, 666-67 (2003) (citations omitted). Our review of the trial court's order and judgment is de novo. *See Jackson v. Jackson*, 280 N.C. App. 325, 335 (2021).

At issue here is the meaning of the following portion of paragraph five of the Agreement:

> The parties acknowledge that Husband is entitled to Pension and Retirement benefits as a result of his service in the military. The parties also acknowledge and agree that Wife is entitled to 50% of Husband's benefits accumulated during the course of the marriage. Said benefits shall be payable to Wife upon Husband's retirement.

There is no dispute between the parties as to the following: 1) Plaintiff is entitled to receive 50% of Defendant's military Pension and Retirement benefits accumulated during the course of the marriage. 2) Plaintiff is entitled to receive 21% of Defendant's military Pension and Retirement benefits. 3) Defendant became entitled to receive his military Pension and Retirement benefits only upon his retirement and, accordingly, these benefits were payable to Plaintiff only upon Defendant's retirement.

Defendant argues that the Agreement's provision that "Wife is entitled to 50% of Husband's benefits *accumulated during the course of the marriage*" plainly and unambiguously indicates that the amount of Defendant's benefits to which Plaintiff

is entitled to share was "frozen" on the date they entered into the Agreement. Thus, Defendant argues, Plaintiff is only entitled to receive 21% of what his hypothetical retirement pay would have been had he retired on the date the parties entered into the Agreement. Defendant's proposed reading of the plain language is untenable as it undervalues the "benefits accumulated during the course of the marriage" and fails to construe the Agreement "in accordance with . . . the laws of the State of North Carolina" applicable at the time the parties entered the Agreement.

Plaintiff's *percentage* of Defendant's benefits is calculated by dividing the number of years Defendant served in the military while the parties were married by the number of total years Defendant served in the military to determine the coverture fraction, and then multiplying the coverture fraction by 50% (per the Agreement). Thus, every month Defendant served in the military after the parties entered into the Agreement reduced the coverture fraction and diluted Plaintiff's percentage of benefits. If the amount of Defendant's retirement benefits to which Plaintiff is entitled to share was "frozen" at the time they entered into the Agreement, but her percentage of benefits is calculated based on the total number of years Defendant served in the military, the benefits she would receive would be far less than the benefits "accumulated during the course of the marriage."

Additionally, freezing the amount of Defendant's military retired pay to which Plaintiff is entitled to share at the amount attributable to his rank and years of military service at the time the parties entered into the Agreement disregards that

Defendant's final retired pay is based on the foundation of marital effort. Again, under Defendant's reading, the benefits Plaintiff would receive would be far less than the benefits "accumulated during the course of the marriage."

Additionally, Defendant was entitled to receive his Pension and Retirement benefits only upon his retirement and, accordingly, these benefits were payable to Plaintiff only upon Defendant's retirement. Under Defendant's approach, the value of his benefits accumulated during the course of the marriage could grow in value until his retirement while Plaintiff's portion of those benefits would not grow, notwithstanding her inability to access her portion. Yet again, under Defendant's reading, the benefits Plaintiff would receive would be far less than the benefits "accumulated during the course of the marriage."

The Agreement's provision that "Wife is entitled to 50% of Husband's benefits *accumulated during the course of the marriage*" plainly and unambiguously indicates that Wife is entitled to receive 21% of Husband's actual disposable military retirement pay he receives upon his retirement. This reading is supported by construing the agreement in accordance with the standard method of dividing military pensions in North Carolina in effect at the time the parties entered into the Agreement.

Before 1981, military pensions were not subject to division by state courts in marital dissolution proceedings. Congress enacted the Uniformed Services Former Spouses Protection Act ("USFSPA") to provide that, for pay periods after 25 July

1981, "disposable retired pay" of military personal is subject to division by a state court in a divorce proceeding. 10 U.S.C. § 1408(c)(1) (2009). USFSPA defined "disposable retired pay" as "the total monthly retired pay to which a member is entitled less [certain specified] amounts." 10 U.S.C. § 1408(a)(4)(A) (2009).

In North Carolina, the amount of an "award of nonvested pension, retirement, or other deferred compensation benefits" in equitable distribution was determined by applying a coverture fraction – "the proportion of time the marriage existed (up to the date of separation of the parties), simultaneously with the employment which earned the vested and nonvested pension, retirement, or deferred compensation benefit, to the total amount of time of employment" – to the value of "the vested and nonvested accrued benefit . . . ." N.C. Gen. Stat. § 50-20.1(b), (d) (2009); *see Cunningham v. Cunningham*, 171 N.C. App. 550 (2005); *Seifert v. Seifert*, 82 N.C. App. 329 (1986). Thus, the coverture fraction was multiplied by a servicemember's disposable retired pay to determine the value of a military pension.

On 23 December 2016, new rules for the division of military retired pay took effect for servicemembers who were not yet receiving retired pay on a divorce date after 23 December 2016. The "Frozen Benefit Rule," prescribed in Section 641 of the National Defense Authorization Act ("NDAA") for 2017 and clarified at Section 624 of the NDAA for 2018, limits the "disposable retired pay" which can be divided to a hypothetical amount of retired pay, calculated as if the servicemember had retired on

the date of the decree of divorce, dissolution, annulment, or legal separation. *See* 10 U.S.C. § 1408(a)(4)(B) (2018).

Here, the parties entered into the Agreement on 30 January 2009. At that time, the standard in North Carolina to determine the value of a military pension was to multiply the coverture fraction (marital service divided by total service) by the disposable retired pay as of retirement. It was not until almost seven years later that the Frozen Benefit Rule came into effect.

Husband argues that his intent when he signed the Agreement "merely forecasted the Frozen Benefit Rule." However, the clear and unambiguous language of paragraph five does not implement the Frozen Benefit Rule codified in 2016. Instead, the clear and unambiguous language implements the standard in place at the time the parties entered into the Agreement in 2009, and, as the trial court concluded,

> indicates that the Plaintiff is entitled to a calculation of a percentage of the Defendant's retirement pension pursuant to a coverture fraction using as its variables: Defendant's present disposable military retirement pay; Defendant's total military retirement points; and those military retirement points Defendant accumulated during the course of the parties' marriage.

Accordingly, we conclude, as did the trial court, that "Plaintiff, pursuant to the Agreement, is entitled to twenty-one percent (21%) of the Defendant's disposable military retired pay."

## III.    Conclusion

For the reasons stated above, the trial court's Military Pension Division Order and the Declaratory Judgment are affirmed.

AFFIRMED.

Judges HAMPSON and CARPENTER concur.