590 So.2d 956 (1991)
Franklin DeLOACH, husband, Appellant,
v.
Ruthie Mae DeLOACH, wife, Appellee.
No. 90-3139.
District Court of Appeal of Florida, First District.
November 21, 1991.
Rehearing Denied January 2, 1992.
*957 William H. Grant, III, Orange Park, for appellant.
No brief filed for appellee.
ERVIN, Judge.
In this appeal from an order modifying a marital dissolution judgment, which awarded his former wife, Ruthie Mae DeLoach, a portion of his nonvested military pension, appellant, Franklin DeLoach, contends that the trial court erred in (1) determining a military retirement pension that had not vested to be a marital asset subject to equitable distribution, (2) holding that his former wife was automatically entitled to one-half of his pension, (3) failing to take judicial notice of 10 U.S.C.S. §§ 6326 and 6330 (Law.Coop. 1980), which establish the vesting periods for retirement and retainer pay, (4) distributing his military retirement benefits without considering any factors other than the duration of the marriage and the number of years of military service, and (5) ordering him to submit documentation to the government that would authorize direct payment of his pension benefits to the former wife. We affirm in part, reverse in part, and remand for the reasons stated herein.
The parties were divorced on January 8, 1988, at a time when the former husband had served as a career enlisted member of the United States Marine Corps for approximately thirteen and one-half years, nine years of which were during the marital relationship. In the original distribution order, the court awarded the former wife one-half of the husband's future military pension earned during the marriage. On appeal, this court reversed, stating that although the husband's pension was marital property which could be equitably distributed or treated as a source of alimony, there was insufficient evidence to support the trial court's award. DeLoach v. DeLoach, 552 So.2d 324 (Fla. 1st DCA 1989) (hereafter DeLoach I). We remanded to the trial court to determine "whether the pension was vested or mature, when it *958 would become vested, its present value, or when the husband would be entitled to begin to receive his benefits thereunder." Id. at 325.
In the proceedings conducted on remand, the trial court took judicial notice of 10 U.S.C.S. §§ 1406, 1408, and 6333 (Law Coop.Supp. 1991), and concluded that the former wife was entitled to one-half of the value of nine years of the husband's pension upon his retirement from military service, to be calculated according to his monthly base pay of $1,520 at the time of dissolution. The court also required appellant to complete documentation that would permit the proper military authorities to pay the retirement-benefit portion directly to the former wife.

I.
In arguing that the trial court erred in considering his military pension, which had neither vested[1] nor matured,[2] as a marital asset, the former husband relies upon the Second District Court of Appeal's decision in Summers v. Summers, 491 So.2d 1270 (Fla. 2d DCA 1986). In that case, the Second District held that a pension plan could not be considered an asset for equitable distribution purposes until it had vested, for the reason that the employee's entitlement to future payments from such a plan could be destroyed, for instance, by a change in employment. Id. at 1271. Without explicitly stating so, the Second District apparently considered the employee's interest to retirement benefits in a nonvested pension to be only an expectancy.
We cannot agree with the Second District, because we are of the view that it is inconsistent with prevailing decisional law in this and other jurisdictions. In so saying, we recognize that appellant's nonvested, noncontributory pension plan may never vest; that such contingencies as "resignation, discharge, death and other factors may occur before the service member is eligible to receive retirement pay." Bullock v. Bullock, 354 N.W.2d 904, 910-11 (N.D. 1984). Such factors, nonetheless, do not in our view militate against a determination that a portion of a nonvested pension that has accumulated retirement credits during the marital partnership may be considered a marital asset.
Our conclusion in this regard is strongly supported by an opinion of the Supreme Court of California in Brown v. Brown, 15 Cal.3d 838, 126 Cal. Rptr. 633, 544 P.2d 561 (1976), in which the court receded from a long line of California decisions which had held that nonvested pension rights were not property, but a mere expectancy, and as such were not subject to division upon dissolution of marriage. In reaching its decision to the contrary, the court recognized that the employee's right to retirement benefits is one that is contractual in nature, and "[t]he fact that a contractual right is contingent upon future events does not degrade that right to an expectancy. The law has long recognized that a contingent future interest is property no matter how improbable the contingency." Id. 126 Cal. Rptr. at 638 n. 8, 544 P.2d at 566 n. 8 (citation omitted). The essential nature of a pension plan as a contractual right, whether vested or not, was explained by the court in the following terms:
Although some jurisdictions classify retirement pensions as gratuities, it has long been settled that under California law such benefits "do not derive from the beneficence of the employer, but are properly part of the consideration earned by the employee." Since pension benefits represent a form of deferred compensation for services rendered, the employee's right to such benefits is a contractual right, derived from the terms of the employment contract. Since a contractual *959 right is not an expectancy but a chose in action, a form of property, we [have] held ... that an employee acquires a property right to pension benefits when he enters upon the performance of his employment contract.
Id. 126 Cal. Rptr. at 637, 544 P.2d at 565 (citations omitted).
The distinction between a nonvested pension and an expectancy was also well analyzed as follows by the Superior Court of New Jersey, Appellate Division, in Whitfield v. Whitfield, 222 N.J. Super. 36, 535 A.2d 986 (App.Div. 1987), in regard to a pension that would not vest until four years after the parties' marital dissolution:
Concededly, there is an element of uncertainty connected with this pension insofar as defendant must continue to work until 1988 in order to receive it. In our estimation, this uncertainty has been the source of the analytical error on the part of the courts which have characterized a nonvested pension as a "mere expectancy." In fact, a nonvested pension is a far cry from an entirely speculative "mere expectancy," the nature of which would not justify inclusion in the marital estate. An expectancy "describes the interest of a person who merely foresees that he might receive a future beneficence, such as the interest of an heir apparent ..., or of a beneficiary designated by a living insured who has a right to change the beneficiary... . As these examples demonstrate, the defining characteristic of an expectancy is that its holder has no enforceable right to his beneficence."
Unlike an expectancy, accession to which comes entirely by chance, the employee has some control over receipt of a non-vested pension. To be sure, the control is not absolute because the employee may be terminated or the business may close. However, if the employee continues to work for the required number of years, he will be legally entitled to his pension. This is what distinguishes a non-vested pension from a mere expectancy. Such a pension is property in the form of a contract right to deferred compensation subject only to the fulfillment of the condition of the requisite number of years of employment by the employee.
Id. 535 A.2d at 991 (citations omitted). Stated another way, the interest an employee has in a nonvested pension is, beginning with such person's employment, "a vested interest to participate in the plan, which if wrongfully denied by his employer would be the proper basis for a suit at law to enforce his contractual rights." Poe v. Poe, 711 S.W.2d 849, 855 (Ky. Ct. App. 1986) (emphasis omitted).
We are confident that Florida has now aligned itself with those courts in a large number of out-of-state jurisdictions that recognize that nonvested pensions are property rights which may be subject to division upon dissolution of the marriage. See Charles C. Marvel, LL.B., Annotation, Pension or Retirement Benefits as Subject to Award or Division by Court in Settlement of Property Rights Between Spouses, 94 A.L.R.3d 176, 214-222, 242-244 (1979 & Supp. 1991). Our conclusion is in part supported by the Florida Supreme Court's opinion in Diffenderfer v. Diffenderfer, 491 So.2d 265 (Fla. 1986). Although the court in Diffenderfer addressed only the explicit question of whether an employee spouse's entitlement to retirement benefits in a vested pension plan could be regarded as marital property subject to equitable distribution, we do not consider that Diffenderfer precludes consideration of nonvested pensions as marital property. The following broad language in Diffenderfer appears to acknowledge that an employee's right to future retirement benefits, whether vested or not, is contractual in nature, rather than simply an expectancy or gratuity:
Whether the [pension] plan is contributory or noncontributory, the employee receives a lesser present compensation plus the contractual right to the future benefits payable under the pension plan. The value of those contractual rights will vary depending upon the number of years employed but where, as here, the rights are vested, or where they are matured, they have an actuarially calculable value. To the extent that *960 they result from employment time after marriage and before commencement of a matrimonial action, they are contract rights of value, received in lieu of higher compensation which would otherwise have enhanced either marital assets or the marital standard of living and, therefore, are marital property.
Id. at 267 (quoting Majauskas v. Majauskas, 61 N.Y.2d 481, 474 N.Y.S.2d 699, 704-05, 463 N.E.2d 15, 20-21 (1984)) (emphasis added).
Section 121.011(3)(d), Florida Statutes (1989), which originally took effect July 1, 1974, furnishes further support for our conclusion that it is the public policy of this state that nonvested retirement pensions are no longer considered gratuities or expectancies, but that the employee's future interest therein is derived from the contractual relationship between him or her and the employer. This statute provides, as to state retirement plans: "[T]he rights of members of the retirement system established by this chapter are declared to be of a contractual nature, entered into between the member and the state, and such rights shall be legally enforceable as valid contract rights and shall not be abridged in any way." In interpreting this provision, the Florida Supreme Court has commented that the statute modified prior case law and "vests all rights and benefits already earned under the present retirement plan so that the legislature may now only alter retirement benefits prospectively." Florida Sheriff's Ass'n v. Department of Admin., Div. of Retirement, 408 So.2d 1033, 1037 (Fla. 1981) (emphasis omitted.) Accord Henry v. Department of Admin., Div. of Retirement, 431 So.2d 677, 681 (Fla. 1st DCA 1983).
We are moreover of the opinion that the Summers decision, holding that only vested pensions may be considered marital property, is at variance with a substantial body of case law in this state. Florida decisions involving marital dissolutions reflect general acceptance of the precept, without distinguishing whether retirement pensions have or have not vested, that pensions may be considered either as a source of alimony or as a marital asset. See, e.g., Littleton v. Littleton, 555 So.2d 924 (Fla. 1st DCA 1990); Wehrly v. Wehrly, 440 So.2d 42, 43 (Fla. 1st DCA 1983); Hennessey v. Hennessey, 551 So.2d 597, 598 (Fla. 4th DCA 1989); McReynolds v. McReynolds, 546 So.2d 1153, 1154 (Fla. 2d DCA 1989); Hartzell v. Hartzell, 434 So.2d 353, 354 (Fla. 4th DCA 1983).
In Hennessey, the Fourth District Court of Appeal approved a trial court's inclusion of a nonvested pension plan in its equitable distribution of the parties' property. While acknowledging the employee spouse's reliance upon Summers, the court nonetheless held that the trial court did not abuse its discretion in determining that the nonvested plan was a marital asset. The Fourth District also cited the recent enactment of Section 61.075(3)(a)(4), Florida Statutes (Supp. 1988), which defines marital assets as including, inter alia, "[a]ll vested and nonvested benefits, rights, and funds accrued during the marriage in retirement, pension, profit-sharing, annuity, deferred compensation, and insurance plans and programs." The court thereupon concluded that the statute "effectively eliminates the holding of Summers."
It is not clear in Hennessey, however, whether the marital dissolution proceeding therein was instituted before the effective date of section 61.075. Moreover, Hennessey did not refer to Section 61.076(1), Florida Statutes (Supp. 1988), which, like section 61.075, provides that both vested and nonvested benefits in pensions "are marital assets subject to equitable distribution." Both statutes are expressly made applicable "to all proceedings commenced after the effective date of this act[,]" which was October 1, 1988. Ch. 88-98, § 4, Laws of Fla.
In the case at bar, the proceeding at issue was instituted by the filing of a complaint for marital dissolution in 1987, before the effective date of either of the above statutes. Nevertheless, we cannot conceive that the legislature intended to bar a trial court from considering a nonvested pension plan as a marital asset in a proceeding that had been commenced prior *961 to the effective date of the act,[3] because we consider that the legislature intended these statutes to codify or declare existing case law. Reference to the staff analyses of the Judiciary Committees of both the Florida Senate and House of Representatives furnishes strong support for this conclusion. For example, the House analysis states that the purpose of the legislation was to statutorily define marital property, a concept which had previously "been determined on a case-by-case basis in Florida." Staff of Fla. H.R. Comm. on Judiciary, HB 806 (1988) Staff Analysis 1 (Fla. Archives). The Senate staff analysis referred, as did the House staff, to Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980), which permitted trial judges to utilize lump-sum alimony awards as a means of ensuring an equitable distribution of property. The report continued: "Since Canakaris, numerous cases have expanded and developed this idea of using lump sum alimony for `equitable distribution' of the marital property. However, there appear to be questions left unanswered by these cases." Staff of Fla. S. Comm. on Judiciary-Civil, SB 152 (1988) Staff Analysis 1 (Fla. Archives).
Therefore, because we consider that an employee spouse has a contractual interest in a nonvested pension, we also conclude that the nonemployee spouse, through his or her contributions to the marital relationship, is entitled to a proportionate share in such pension. Accordingly, like the Fourth District in Hennessey, we find no abuse of discretion in that portion of the trial court's order determining a nonvested military pension to be a marital asset.

II.
Appellant next claims that the trial judge did not comply with DeLoach I, in which this court indicated that the judge erred in advising the husband that under Diffenderfer his wife was "automatically entitled" to a portion of his pension, whereas Diffenderfer holds that retirement benefits may be considered an asset either when making an equitable distribution or when determining an alimony award. Upon review of the entire transcript of the hearing below, we conclude that the trial judge realized that the former wife's right to a portion of the pension did not constitute an "automatic entitlement," and he instead decided from the facts before him that it was a marital asset, which he determined should be divided equally between the parties for the nine-year period they were married.

III.
We next decide that although the trial court's order failed to refer specifically to 10 U.S.C.S. §§ 6326 and 6330, pertaining to the length of service necessary to entitle the member to either retirement or retainer pay, such omission was only harmless error, because it is clear from the transcript of the hearing below that the trial judge knew the vesting period for each type of pension. The court did take judicial notice of 10 U.S.C.S. §§ 1406 and 6333,[4] which establish a servicemember's retired or retainer pay base and the method for computing retired or retainer pay according to such pay base.

IV.
The former husband next claims the trial court erred by splitting the military pension in half, based only upon the duration of the parties' marriage, without considering the discretionary factors recited in Diffenderfer.[5] We agree with appellant insofar as the trial court's modification order, *962 which entitled the former wife, upon the former husband's retirement, "to one-half of nine years' worth of the husband's base pay at the time of dissolution in the [monthly] amount of $1,520.00[,] as if said amount was the amount of his pension[,]" appears not to comply with this court's mandate in DeLoach I, notably to determine, if possible, the present value of appellant's nonvested pension.
If the court below considered that by awarding the former wife one-half the value of the former husband's base pay at the time of dissolution, it was reducing the parties' rights in the pension plan to present value, it clearly erred for the primary reason that no expert testimony was received on the subject. Cf. Wolter v. Wolter, 382 N.W.2d 896, 901 (Minn. Ct. App. 1986) (party's statement of present value, standing alone, is insufficient). As observed in In re Marriage of Wisniewski, 107 Ill. App.3d 711, 63 Ill.Dec. 378, 437 N.E.2d 1300, 1305 (1982), if a trial court decides to reduce an interest in a nonvested pension to present value at the time of dissolution, expert testimony is required. This is because, in assessing the present value of such pension, "the court must take account of the possibility that death or termination of employment may destroy those rights before they mature." Brown v. Brown, 15 Cal.3d 838, 126 Cal. Rptr. 633, 639, 544 P.2d 561, 567 (1976). Or, as stated in Whitfield v. Whitfield, 222 N.J. Super. 36, 535 A.2d 986, 994 (App.Div. 1987), this value is
estimated to be the amount of monies the employee would take in return for giving up his right to an unknown number of future payments. This amount is discounted by actuarial calculations reflecting contingencies that could affect future pay outs, with such discounts being given for mortality, inflation, interest, probability of continued employment and probability of vesting. [Skoloff, "How to Evaluate and Distribute Employee Benefits in a Divorce," Nat'l L.J., February 13, 1984, at 25.]
After the trial court has calculated the present value of the pension, it should then determine the nonemployee spouse's interest therein. As stated in Bain v. Bain, 553 So.2d 1389, 1391 (Fla. 5th DCA 1990), in achieving an equitable distribution of marital assets: "Generally, a 50/50 split of marital assets is not required, but is a good starting point." Next the court should multiply this value and percentage amount by a fraction whose numerator is the number of years (or months) of marriage during which benefits were being collected, and whose denominator is the total number of years (or months) necessary in order to receive the pension benefits. Whitfield, 535 A.2d at 993-94. This method of distribution is perhaps easier to illustrate by use of the following equation: Nonemployee spouse's entitlement equals the percentage of the nonemployee spouse's interest in the pension, times the period of participation in the pension plan during the marriage over the total period of participation in the plan necessary for receipt of the pension, times present value. For an example of the above formula, see id.; Hardie, Pay Now or Later: Alternatives in the Disposition of Retirement Benefits on Divorce, 53 Cal.St.Bar.J. 106 (1978).
If the court did consider that the effect of its order was to reduce the nonvested pension to present value, it additionally erred by not ordering an immediate distribution of assets to the former wife. Once a court reduces a benefit to present value, it should order an immediate offset of assets, either by lump sum or periodic amounts, rather than delay distribution until the husband's retirement from military service. Otherwise, the fact that the nonemployee spouse is obligated to await receipt of an equitable share in the pension until an undetermined date "operate[s] as a double reduction: plaintiff [nonemployee spouse] receive[s] a discounted value for immediate distribution but nevertheless [is] required to wait to receive payment until, if and when, the defendant [employee spouse] reache[s] retirement and [begins] receiving benefits." Seifert v. Seifert, 82 N.C. App. 329, 346 S.E.2d 504, 509 (1986), aff'd, 319 N.C. 367, 354 S.E.2d 506 (1987).
*963 On the other hand, if the trial court's order at bar reflects, as seems more likely, an intention to award to the nonemployee spouse a fixed percentage of any payments which the employee spouse receives upon retirement, if and when benefits are received, as a kind of deferred benefit sharing, the trial court also erred. Deferred benefit sharing, the second method generally recognized to allocate pension rights, was recommended for consideration by the California Supreme Court in Brown v. Brown, under the following circumstances:
[I]f the court concludes that because of uncertainties affecting the vesting or maturation of the pension that it should not attempt to divide the present value of pension rights, it can instead award each spouse an appropriate portion of each pension payment as it is paid. This method of dividing the community interest in the pension renders it unnecessary for the court to compute the present value of the pension rights, and divides equally the risk that the pension will fail to vest.
Brown, 544 P.2d at 567 (footnote omitted). However, the trial court at bar did not properly apply this method because (1) it failed to retain jurisdiction over the amounts to be distributed in the future; (2) its method of allocation did not take into consideration the total period of the employee spouse's participation in his pension plan; and (3) it failed to account for increases in the former husband's retirement or retainer benefit between the date of dissolution and the date of retirement.
Regarding the first point, an award of future pension payments as they fall due requires a trial court to reserve jurisdiction to supervise the payments of pension benefits, a requirement which was not observed in the lower court's order now on review. The First District Appellate Court of Illinois explained deferred benefit sharing in greater detail as follows:
In those instances where it is difficult to place a present value on the pension or profit sharing interest due to uncertainties regarding vesting or maturation, or when the present value can be ascertained by the type, or lack, of other marital property makes it impractical or impossible to award sufficient offsetting marital property to the nonemployee spouse, then the trial court in its discretion may award each spouse an appropriate percentage of the pension to be paid "if, as and when" the pension becomes payable (In re Marriage of Brown (1976), 15 Cal.3d 838, 126 Cal. Rptr. 633, 544 P.2d 561; Kalcheim, Marital Property, Tax Ramifications and Maintenance: Practice Under the Illinois Marriage and Dissolution of Marriage Act  A Comparative Study, 66 Ill.B.J. 324, 335 (1978); 42 Mo.L.Rev. 143, 150 (1977).) The marital interest in each payment will be a fraction of that payment, the numerator of the fraction being the number of years (or months) of marriage during which benefits were being accumulated, the denominator being the total number of years (or months) during which benefits were accumulated prior to when paid. The trial court, when using this method of allocation, will retain jurisdiction and award the nonemployee spouse some percentage of the marital interest in each payment.
In re Marriage of Hunt, 78 Ill. App.3d 653, 34 Ill.Dec. 55, 63, 397 N.E.2d 511, 519 (1979).
Regarding point three, the lower court's order denied the nonemployee spouse the opportunity "to share in the increases in retirement benefits due to [post-dissolution] efforts which were built on the foundation of marital effort." Seifert v. Seifert, 82 N.C. App. 329, 346 S.E.2d 504, 508 (1986), aff'd, 319 N.C. 367, 354 S.E.2d 506 (1987). Accord Gillmore v. Gillmore, 29 Cal.3d 418, 174 Cal. Rptr. 493, 499, 629 P.2d 1, 7 (1981) (under the deferred-distribution method, the trial court affords the nonemployee spouse "some protection for the future" and provides her with the opportunity "to share in the increased value of the pension plan"). Because the former husband's retirement or retainer pay benefits, as discussed infra, are to be calculated on a servicemember's base pay at either the time of retirement or transfer to the Fleet *964 Corps Reserve, the lower court's order, limiting the former wife's distributive share to the husband's base pay at the time of dissolution, which would not be paid to her until the time of the husband's retirement, failed to give the wife the opportunity to participate in any increases in the benefits following dissolution.
Finally, regarding point two, because this case must be remanded for further proceedings consistent with this opinion, and the lower court on remand may decide to apportion the former husband's military pension pursuant to the deferred-distribution method, we consider that it would be helpful to recite some illustrative cases. In Bullock v. Bullock, 354 N.W.2d 904, 906 (N.D. 1984), the Supreme Court of North Dakota affirmed a formula in which the number of years the parties were married was divided by the total number of years the employee spouse was a member of the Air Force, times one-half of the member's retirement benefit upon his retirement. This amount was to be paid in monthly installments on the same basis that the servicemember was entitled to receive his military retirement benefits.
Another formula deferring distribution of the employee's military pension upon retirement consisted of the following elements:

150 months (duration of marriage) % of future monthly retirement
total months of military service = payments which were
 earned during the marriage.
% of future 1/2 of Robert's that portion of
monthly retirement [military member's] any post-retirement
payments disposable retired cost-of-living
earned during X or retainer pay (as + increases (10
the marriage defined in 10 U.S.C. U.S.C. section
 section 140(a))[[7]] which are
 1408(c)(1)),[[6]] proportional to
 OR Joanne's [nonemployee
 1/2 of the disposable spouse's] interest in
 retired or retainer the disposable retired
 pay which or retainer pay
 would be payable to computed as of the date
 Robert if he retired retirement.
 at the same rank and
 basic pay rate which he had
 attained as of January 5,
 1985 [date of dissolution].
 WHICHEVER IS LESS.

Poe v. Poe, 711 S.W.2d 849, 851 (Ky. Ct. App. 1986).
Another variation of deferred benefit sharing was approved by the Supreme Court of Delaware in Jerry L.C. v. Lucille H.C., 448 A.2d 223, 225 (Del. 1982), as follows:

*965
Amount of No. of years worked for DuPont Non-employee's
Retirement X [employer] during marriage X entitled
Check No. of years worked for DuPont percentage
 before retirement

Each of these examples is a variation of the formula espoused by the Appellate Court of Illinois, First District, in In re Marriage of Hunt, involving deferred distribution of pension rights. Each includes a fraction with the numerator representing the length of time that pension benefits are accumulated during the marriage, and the denominator representing the total length of time during which such benefits are accumulated. As stated, this method requires the retention of jurisdiction by the trial court in order for it to supervise the payments of the pension-benefit payments once they are finally distributed.
We do not dictate to the trial court which of the above two methods it should employ. It would, of course, be far more preferable for the parties to reach an agreement as to the value of the pension and the amount of the former wife's share. If this is impossible, however, the court must determine the value, either with the assistance of expert evidence, if it employs the method of reducing the pension to present value, or without, if it proceeds in accordance with a formula pursuant to the deferred-distribution method. In deciding which of the two methods to utilize, the court should reach its decision only after a careful consideration of the advantages and disadvantages of each method. See Taylor v. Taylor, 329 N.W.2d 795, 798 (Minn. 1983).
The most obvious advantage of the present discounted valuation method is that "with present valuation the nonemployee spouse receives present, existing assets when they are most needed, and avoids the risk of adverse financial consequences if the employee spouse quits, is fired, dies or becomes disabled."
Seifert, 346 S.E.2d at 507. The court continued:
Present valuation terminates litigation sooner and avoids the continuation of potentially acrimonious relationships, gives the nonemployee spouse use of cash or other marital assets in exchange for the in futuro retirement benefits and gives the nonemployee spouse assets otherwise subject to testamentary disposition. Present valuation precludes the nonemployee spouse from unfairly sharing in post-separation promotions or increases in pay which are separate property and which may generate higher pensions. Goldberg, supra [B. Goldberg, Valuation of Divorce Assets (1984)], at Section 9.5.
The major disadvantage of the present value method is that the employee spouse bears the risk of paying the nonemployee spouse for rights that may never mature. Additionally, the employee spouse may feel cheated because he or she receives only an expectancy of benefits while the nonemployee spouse gets present "real" assets such as home equity, stocks or cash payment.
Id. at 507-08 (citations omitted).
Some of the advantages to employing the second method, deferred division of benefits on a fixed percentage basis, include the following:
This method of evaluation and distribution avoids any risk of paying the nonemployee spouse for rights which, due to intervening events, may not in fact mature. Goldberg, supra at Section 9.5
"Reserving jurisdiction over the future benefits in effecting a subsequent division of the actual monetary benefits [has] the dual advantage of allocating equally between the parties the risk that the rights may never vest [or mature] and enabling the court to better determine the actual proportion of future benefits that accrued to each party during the marriage."
Goldberg, supra, at Section 9.5 n. 3. Using this method the nonemployee *966 spouse is permitted to share in the increases in retirement benefits due to post-separation efforts which were built on the foundation of marital effort. Further, this method avoids prolonging the hearing with complicated actuarial evidence and costly expert testimony. Goldberg, supra. One writer suggests that the use of deferred distribution is preferred in circumstances where it is difficult to presently value the pension or retirement rights due to uncertainties in vesting or maturation or where the present value is ascertainable but the type, or lack of, marital property involved makes it impractical to order immediate distribution. Goldberg, supra at Section 9.5 n. 3.
Seifert, 346 S.E.2d at 508-09.
There is a conflict among jurisdictions regarding which situations are more appropriate for employing the present-discounted-value method as opposed to the deferred-distribution method. One appellate court has stated that present assignment of property would be feasible only in circumstances in which the employee spouse is far from retirement and the marriage is of short duration, due to the facts that the prospective pension has little present value and the nonemployee spouse's share of pension benefits when paid would be confined by the brevity of the marriage. See Dewan v. Dewan, 17 Mass. App. 97, 455 N.E.2d 1236, 1240 (1983). Another court, on the other hand, considers that reduction to present value is preferable in situations wherein the pension is close to vesting and the value thereof is clearly ascertainable. In re Marriage of Wisniewski, 107 Ill. App.3d 711, 63 Ill.Dec. 378, 437 N.E.2d 1300, 1305 (1982). Finally, another court posits that in the absence of unusual circumstances, a trial court should not, without the approval of both parties, utilize the method of reducing to present value because, "[j]ust as equity should not allow a spouse to be divested of an interest acquired during a marriage solely because there is a condition to be fulfilled, neither should equity mandate a pensioner to pay a spouse at the time of divorce a share of a pension which might never be received." Whitfield, 535 A.2d at 994. The Florida Supreme Court in Diffenderfer indicated a general preference for reduction to present value, but it did not discuss which method was favored in the event the parties were unable to agree upon the pension's value. Diffenderfer, 491 So.2d at 269.
In addition to considering the advantages and disadvantages of the above two methods for apportioning the parties' interests in nonvested pensions, the trial court should be aware of the following provisions of law applicable to military pensions in general, and those applicable to pensions available to members of the Marine Corps in particular. While Congress has prescribed the particular means by which a member of the armed services may achieve his or her rights to retirement benefits, it has delegated to the states the right to determine the proper division of such benefits between the spouses upon dissolution of marriage. See Federal Uniformed Services Former Spouse's Protection Act (FUSFSPA), 10 U.S.C. § 1408(c)(1), permitting trial courts to "treat disposable retired or retainer pay ... either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court."
Although state courts may divide military retirement pay pursuant to their respective property laws, they cannot disregard a specific provision to the contrary in the FUSFSPA. For example, the spouse of the military member is limited, upon dissolution of the marriage, to no more than fifty percent of the disposable retired or retainer pay of the member. 10 U.S.C.S. § 1408(e)(1). And disposable retired or retainer pay does not include that portion of a military pension attributable to disability benefits. Mansell v. Mansell, 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989). Additionally, the final judgment allocating to the nonemployee spouse a share in the pension must comply generally with the provisions of 10 U.S.C.S. 1408(b), e.g., by providing the identification, if possible, of the servicemember's social security number.
An enlisted member of the Marine Corps may achieve entitlement to retirement benefits *967 in one of two ways. First, he or she may complete thirty or more years of active service in the Corps. 10 U.S.C.S. § 6326. Second, after twenty or more years of active service a servicemember may request a transfer to the Fleet Marine Corps Reserve, after which he or she is entitled to retainer pay, based on the number of years served in active duty. 10 U.S.C.S. § 6330(b) & (c). A member of the Fleet Marine Corps Reserve is subject to recall to active duty in the event of war or national emergency. 10 U.S.C.S. § 6485(a). In such event, the reservist does not receive retainer pay while on active duty, but instead receives the regular pay of an enlisted person based upon such person's rank and length of service. 10 U.S.C.S. § 6330. When his or her years of active and inactive service total thirty, the reservist is transferred to the retired list and begins receiving retirement pay in the same amount that he or she had received as retainer pay. 10 U.S.C.S. § 6331. The trial court should be aware of the cost-of-living adjustments provided in 10 U.S.C.S. § 1401a.
We are therefore of the view that, in the absence of any agreement between the parties regarding how the nonvested pension should be apportioned, the court may decide, after a careful consideration of the advantages and disadvantages of each method, to reduce the pension to present value as of the date of dissolution. In order for it to do so, however, it must have before it competent evidence relating to its present value.
In the event, however, the lower court decides on remand to delay distribution of the pension benefits, it has the option of deciding to defer distribution of the nonemployee spouse's share in the pension until the date of the employee spouse's actual retirement, or, if the former husband so elects, upon the date of his transfer to the Fleet Marine Corps Reserve. If the court chooses this method of distribution, it would apply one or a variation of the deferred-distribution formulas previously discussed and direct distribution of the former wife's interest in the pension upon payment of the former husband's retirement proceeds.
As earlier stated in this opinion, there are essential factors common to each formula. In applying the deferred distribution method, the trial court would essentially determine the former wife's entitled percentage to the military member's pension, which, pursuant to 10 U.S.C. § 1408(e)(1), cannot exceed fifty percent of the retired or retainer pay of the pensioner, and then multiply that amount by a fraction, with the numerator being that period of time that pension benefits were accumulated during the marriage, and the denominator being the total length of time of the husband's active service prior to either his receipt of retirement benefits, or his transfer to the Reserve, times the amount of retirement or retainer pay benefits, if, as, and when they are received.
The reason the denominator of any formula utilizing the deferred method of distribution need only reflect the number of years which the employee spouse serves on active duty is because an enlisted member's "entitlement to retired pay is derived solely from his service on active duty." Davis v. Davis, 113 Cal. App.3d 485, 169 Cal. Rptr. 863, 865 (1980). It is moreover immaterial to any consideration of the wife's distributive share in the benefits paid to the husband, if the latter decided to transfer to the Reserve, that the payments made to him are designated "retainer" rather than "retirement." As observed in Mercier v. Mercier, 48 Cal. App.3d 775, 121 Cal. Rptr. 886, 888 (1975), there is no practical distinction between retirement pay and retainer pay, and a nonemployee spouse's interest in the employee spouse's pension benefits vests upon the latter's transfer to the Fleet Reserve. But see Sprott v. Sprott, 576 S.W.2d 653 (Tex. Ct. App. 1978).
If the lower court utilized the deferred method of distribution, it would be required to retain jurisdiction of the case for the purpose of directing the wife's distributive share upon the husband's receipt of retirement or retainer payments.

*968 V.
Finally, the former husband correctly claims that the trial court erred in requiring him to complete documentation that would permit the military service to pay the retirement-benefit portion directly to the former wife. Under 10 U.S.C.S. § 1408(d)(2), a former spouse is eligible for direct payment only if the parties were married during ten years of the servicemember's creditable service. Because the parties were married only nine years,[8] direct payment is not available to appellee.
AFFIRMED in part, REVERSED in part, and REMANDED with directions to the trial court, if the parties are unable to agree on an amount which would satisfy the former wife's share in the military member's nonvested pension, to apportion, after a careful consideration of the advantages and disadvantages of either of the two methods above stated, the value of said pension, and to strike as well the second sentence of paragraph two of the final order in which appellant is required to apply for direct payment of benefits to his former wife.
SMITH and ALLEN, JJ., concur.
NOTES
[1] A vested pension is one "which is not subject to a condition of forfeiture if the employment relationship terminates before retirement. In other words, [it is] a right which survives the voluntary or involuntary termination of the employee." Janssen v. Janssen, 331 N.W.2d 752, 753 (Minn. 1983).
[2] A matured pension is one which accords the "unconditional right to immediate payment upon retirement." Diffenderfer v. Diffenderfer, 491 So.2d 265, 266 (Fla. 1986). A pension which is vested but unmatured would provide no right to the pensioner to immediate payment of pension benefits. Janssen, 331 N.W.2d at 753.
[3] Indeed, although in Littleton v. Littleton, 555 So.2d 924 (Fla. 1st DCA 1990), holding that a nonvested pension could be considered a marital asset subject to equitable distribution, this court did not explicitly refer to either of the above statutes or the date the action therein commenced, it appears from an inspection of our files that the action was in fact brought in 1987, before either statute was enacted.
[4] Section 6333(a), in turn, refers to Section 1409, which provides the formula for calculating retainer pay.
[5] Those factors include: the parties' wealth and future prospects, the length of the marriage, and the parties' respective contributions to the marriage. Diffenderfer, 491 So.2d at 269.
[6] This provision permits disposable retired or retainer pay to be considered either solely the property of the military member, or of the member and his or her spouse pursuant to the laws of the jurisdiction considering the action.
[7] The trial court's reference to "section 140(a)" no doubt meant section 1401a, providing generally for adjustments of retired or retainer pay to reflect changes in the consumer price index.
[8] From a superficial reading of 10 U.S.C.S. § 1408(d)(2), one might conclude that the nonemployee spouse is not entitled to any portion of the military member's pension, in that the marriage was of a duration less than ten years. Any such interpretation, however, has been soundly rejected by those courts that have considered the issue, which have held instead that the ten-year provision in subsection (d)(2) applies only in situations in which direct payments are to be made by the Secretary of the particular branch of the service to the nonemployee spouse. See e.g., Le Vine v. Spickelmier, 109 Idaho 341, 707 P.2d 452, 455 (1985); Oxelgren v. Oxelgren, 670 S.W.2d 411 (Tex. Ct. App. 1984).