683 So.2d 1119 (1996)
Stewart D. WILLIAMS, Appellant/Cross-Appellee,
v.
Marny S. WILLIAMS, Appellee/Cross-Appellant.
No. 96-149.
District Court of Appeal of Florida, Third District.
December 11, 1996.
Lauri Waldman Ross, Miami, for appellant/cross-appellee.
Arnold Nevins, Miami, for appellee/crossappellant.
Before COPE, GODERICH and SHEVIN, JJ.
COPE, Judge.
Stewart D. Williams appeals, and Marny S. Williams cross-appeals, a final judgment of dissolution of marriage. We affirm.
*1120 Appellant former husband contends that the trial court erred in treating as a marital asset the stock the former husband holds in the law firm of Angones, Hunter, McClure, Lynch & Williams, P.A. After several years of work as an associate, the former husband became a 12½ percent shareholder in the law firm in January 1, 1992. This occurred during the parties' marriage. The former husband argues that because the law firm did not require him to pay for his stock, it follows that the stock should be viewed as a gift and not a marital asset. The trial court stated, "The court rejects the Husband's testimony that his [share] acquisition was a `gift', as the evidence fully demonstrated that the Husband was awarded his interest in the firm, not as a gratuitous gesture from his partners, but in consideration of his hard work, labor and efforts which benefited his law firm." We find no error in that determination.
The former husband next contends that the trial court assigned an excessive value to his stock for purposes of equitable distribution. At the final hearing, both parties presented expert testimony from certified public accountants in order to calculate a value for the law practice. Both experts used an adjusted book value method. Using book value as a beginning point, the experts calculated a value for the non-contingent work in progress at the law firm. This was done by calculating amounts billed but unpaid, as well as an amount for hours worked through the valuation date, but not yet billed. Both experts arrived at similar values for the noncontingent aspect of the law practice. Both experts also agreed that there should be no additional component for goodwill.
The experts differed, however, on whether a value should be assigned to certain pending contingency cases. The parties had agreed on an asset valuation date of January 21, 1994. As of that date, the law firm had certain pending class action contingency cases in which settlements had been reached. The firm was awaiting court approval of the class action settlements, as well as a court order awarding attorney's fees to the law firm as plaintiffs' counsel. Shortly after the agreed valuation date, the settlements were approved and the attorney's fees were awarded to the law firm.
The former husband and his expert argued that no value should be ascribed to the pending contingency cases. The former wife and her expert argued that the contingency cases should be valued because the contingency had occurred prior to the valuation date and there was sufficient data to allow valuation. The trial court agreed with the former wife and included a value for the contingency cases in arriving at the value of the former husband's stock in the law firm.
We find instructive the discussion in Quinn v. Quinn, 83 Md.App. 460, 575 A.2d 764 (Md.Ct.Spec.App.1990):
In calculating the value of appellant's law firm, appellee's expert included both contingent and noncontingent work in progress in his calculations. Generally, in valuing a professional partnership, the value of work in progress, along with other tangible factors, should be considered. This is so because at any time the amount of work actually done on the work in progress can be itemized and its value calculated.
By contrast, a contingent fee cannot be recouped until the case is completed and either an award is made or a settlement is reached. Inasmuch as the amount of the fee, if one is ever realized, depends on the amount of the award or settlement, its ultimate value is, to say the least, highly speculative. Moreover, there is no guarantee that a settlement will ever be had or that an award will ever be made in any particular case. Consequently, the attorney may never receive a contingent fee. Even if such a fee is ultimately received, its value to the attorney is not ascertainable until he or she actually receives it.
. . . .
While we are aware that other courts have held that contingent fees cannot be considered as assets of a law firm or as marital assets, we are not prepared to say that the value of a contingent fee can never be determined or considered as an asset of a law firm. In the case sub judice, however, we find that appellee's expert did not have a sufficient basis on which to value *1121 the contingent fees of appellant's law firm. We reach this conclusion because, insofar as we can determine from the record, appellee's expert valued the contingent fee cases based solely on the number of hours expended on the cases multiplied by an hourly rate. As we have already mentioned, the hours worked on a contingent fee case may have little or no relation to the ultimate award or settlement. For these reasons, the value of appellant's law firm will have to be recalculated.
Id. at 470, 575 A.2d at 769-70 (emphasis added; footnotes and citations omitted).
The Quinn decision focuses on the problem of assigning a reliable value to pending contingency cases, because of the uncertainty about whether the plaintiff will achieve a recovery, and if so, in what amount. In the present case, those uncertainties do not exist. As of the valuation date, class action settlements had been achieved. The contingency had occurred sufficiently to justify including the contingency cases in the valuation of the law firm. Although the actual amount of the plaintiffs' attorney's fees had not been set as of the valuation date, it was set shortly thereafter and well before the final hearing. We agree with the trial court that there was an adequate basis on which to place a value on the pending contingency cases as of the valuation date.[1]
The trial court reduced the value of the former husband's shares by 20 percent because the husband's shares represented a minority interest and were not readily marketable. This position was advanced by the former husband's expert. We conclude that the discount was within the discretion of the trial court and reject the former wife's crossappeal on this point.
The former husband contends that the trial court erred in its valuation of the marital home. This residence was the husband's separate property which he brought to the marriage. During the marriage the home was completely renovated and enlarged. This was accomplished using marital funds and marital borrowing. As a result, the residence greatly increased in value during the marriage.
The former husband argued that his share of the appreciation in the home should be calculated solely under Landay v. Landay, 429 So.2d 1197 (Fla.1983). We agree with the trial court that the Landay approach addresses passive increases in property value. Here the trial court found that the postmarriage increase in the value of the property was attributable to marital funds and marital effort in renovating and expanding the marital residence. We find no error in this ruling.
By motion for rehearing in the trial court the former husband reiterated his view that he should be allocated a share of the postmarital appreciation of the property in accordance with Landay v. Landay. The trial court denied the motion, saying in part that "[i]n this case there was no evidence introduced regarding the increased value of the marital home without the construction during the marriage."
On appeal the former husband challenges this statement by the trial court. The former husband points out that by analyzing components of the appraisals which were in evidence, a figure can be arrived at for passive appreciation based on the appraisers' valuation of the underlying land without improvements. While in theory the former husband may be correct, we decline to disturb the final judgment because this argument was not presented in the trial court. That is, the former husband's consistent position in the trial court was that the calculation should be done solely in accordance with Landay. The former husband did not present the trial court with an analysis, much less financial data, to distinguish between passive *1122 appreciation of the property and appreciation attributable to postmarital construction.
The former husband next argues that the trial court erred with respect to one aspect of the child support award. In this case the former wife is the primary residential parent. Child support was ordered in accordance with the child support guidelines. The court granted exclusive possession of the marital home to the wife and two minor children until the youngest child reaches the age of eighteen or the former wife remarries.
The trial court awarded the former wife a portion of the former husband's ownership interest in the marital home as lump sum alimony, so that the parties' respective ownership interests are 50.5 percent for the husband and 49.5 percent for the former wife. The parties are to divide the mortgage payments in accordance with their ownership interests, as well as any repairs which exceed $500.[2]
The former husband argues that since the exclusive possession award is an aspect of child support, it follows that the former husband should receive credit against the child support award for the amount which he pays on the monthly mortgage payment. In support of that proposition, the former husband relies on Gregg v. Gregg, 623 So.2d 831 (Fla. 4th DCA 1993), but the former husband's reliance on that case is misplaced. In Gregg the former husband owned a house prior to the date of the parties' remarriage. Upon the parties' second divorce, the trial court gave the former wife exclusive use and possession of the house until the child became an adult. The Fourth District concluded, based on the facts of that case, that the husband should be given a credit against the child support award for the fair rental value of the house, which was the former husband's separate property. The court reasoned that the fair rental value of the house was properly viewed as child support.
In this case, the former husband does not base his argument on fair rental value as in Gregg, but instead argues that he should receive a credit against child support for his 50.5 percent of the mortgage payment. To the contrary, as stated by the Florida Supreme Court:
The rule applicable to tenancies in common is that all owners contribute equally to the maintenance of the ownership interest in the property. After divorce, the parties become tenants in common and, as such, have equal responsibility in making all payments necessary to maintain their ownership of the property.
Kelly v. Kelly, 583 So.2d 667, 668 (Fla.1991).[3] The parties must pay the mortgage and maintenance expenses in order to preserve the value of the property they hold in common. When the property is sold, the parties will recapture the payments they made. A credit for mortgage payments against child support is not appropriate.
The former husband relies on Bailes v. Bailes, 468 So.2d 396 (Fla. 3d DCA 1985), to support his claim for a credit. However, Bailes does not support the former husband's position. In Bailes the former husband was the residential parent and was granted the exclusive use and occupancy of the marital home, apparently during the minority of the children. Id. at 397. The former wife complained that she had not been granted a credit for the fair rental value of her share of the jointly held marital home during the period of exclusive use and occupancy. The former husband had, however, been ordered to cover all of the mortgage payments without any provision for credit to the husband for making the wife's share of payments at the time the home was sold.[4] Based on the record existing in that case, this court concluded that the wife had been given a substantial offsetting benefit and declined *1123 to order an award for fair rental value in addition.
Bailes does not stand for the proposition that a party is entitled to a credit for mortgage payments against a child support award. See Fischer v. Fischer, 503 So.2d 399, 400-01 & n. 1 (Fla. 3d DCA 1987). The burden remains on the party who desires credit to show the trial court the fair rental value.[5]
As to the remaining point on the former husband's appeal, we affirm the rehabilitative alimony award.
On the remaining points of the cross-appeal, we see no abuse of discretion.
Affirmed.
NOTES
[1] A Colorado decision describes a more expensive method for valuation of pending contingency cases:

One method approved by our supreme court for the division of vested but unmatured contingency payments is the "reserve jurisdiction method." This allows the trial court to determine the division formula at the time of the decree but to retain jurisdiction to distribute payment when the contingent funds are received.
In re Marriage of Vogt, 773 P.2d 631, 632 (Colo. Ct.App.1989) (citation omitted). We need not address this approach.
[2] The former wife must pay for repairs up to $500.
[3] In this case the parties' respective responsibilities are proportional to their ownership interests.
[4] It is not clear in Bailes whether the judgment expressly precluded credit for the former husband, or whether the judgment was merely silent on the subject of credit. Id.

The later Florida Supreme Court decision in Kelly v. Kelly holds that where the judgment is silent on the subject of credit, then credit is to be awarded. 583 So.2d at 668 & n. *. If credit is to be denied, the judgment must so provide. Id.
[5] We need not reach the former wife's argument that the trial court in any event has discretion to deny the credit where justified by the financial circumstances.