689 So.2d 378 (1997)
Gary ROBERTS, Appellant/Cross-Appellee,
v.
Ellen D. ROBERTS, Appellee/Cross-Appellant.
Nos. 95-3794, 96-0390.
District Court of Appeal of Florida, Fourth District.
February 26, 1997.
Rehearing Denied March 31, 1997.
*379 Richard A. Kupfer of Richard A. Kupfer, P.A., West Palm Beach, for appellant/cross-appellee.
Jane Kreusler-Walsh of Jane Kreusler-Walsh, P.A., West Palm Beach, and Cathy L. Kamber of Renick, Singer & Kamber, Lake Worth, for appellee/cross-appellant.
FARMER, Judge.
We affirm the trial court's resolution of all issues on appeal except for the one we now discuss. It involves the wife's contention that certain work in progress in the husband's professional offices should be valued and considered for purposes of alimony and as part of an equitable distribution under section 61.075, Florida Statutes (1995). We partially reverse the trial judge's decision on that subject.
The husband is an attorney handling primarily personal injury cases on behalf of claimants. His fees are usually earned under contingency fee contracts, by which he is entitled to compensation only if his client recovers money. When there is a recovery, his fee is a percentage of the recovery.
The wife argues that unearned and unrealized fees on his cases in progress constitute income for purposes of alimony and marital property for purposes of equitable distribution. She offered expert testimony at trial regarding the value of his active but unresolved files, but the trial judge declined to consider or assign any value to those cases as such, stating:
"With regard to that work in progress, the Court finds that the evidence of value presented is speculative, dependent upon assumptions and projections not adequately supported by the evidence to the requisite degree of certainty that is required by the law. Accordingly, the value of the interests of the Husband in [his law practices] will be limited to [earned income] and the Court will assign no value to the work in progress."
On rehearing, the trial judge further explained:
"The Court has carefully considered the out-of-state case authority submitted by the Wife in support of her argument that the cases in progress in the Husband's ... law firm, to the extent that same have been `earned' during the marriage, ought to be valued and equitably distributed. However, the Court notes that there is no Florida case that has made such an award and determines that this is not a proper subject for equitable distribution."
Although this issue was one of first impression at trial, we now have Williams v. Williams, 683 So.2d 1119 (Fla. 3d DCA 1996), in which the court addresses this issue. In Williams, the trial court assigned a value to certain contingency fee cases that had *380 been settled but without the recovery having yet been effectuated and the fees thus actually earned. The trial court thereupon included the value of these settled cases in determining the overall value of the husband's interest in his firm. The third district affirmed that decision, quoting with approval the following from Quinn v. Quinn, 83 Md. App. 460, 575 A.2d 764 (1990):
"Generally, in valuing a professional partnership, the value of work in progress, along with other tangible factors, should be considered. This is so because at any time the amount of work actually done on the work in progress can be itemized and its value calculated.
"By contrast, a contingent fee cannot be recouped until the case is completed and either an award is made or a settlement is reached. Inasmuch as the amount of the fee, if one is ever realized, depends on the amount of the award or settlement, its ultimate value is, to say the least, highly speculative. Moreover, there is no guarantee that a settlement will ever be had or that an award will ever be made in any particular case. Consequently, the attorney may never receive a contingent fee. Even if such a fee is ultimately received, its value to the attorney is not ascertainable until he or she actually receives it." [c.o.]
575 A.2d at 769-70. Although Quinn had noted that a contingency fee case might be considered an asset of the law firm, it reversed because the trial court lacked a sufficient basis on which to value the pending cases. The trial court there had determined the value by multiplying the number of hours expended on each case by an hourly rate. Quinn concluded, however, that the hours worked on a contingency fee case may have little or no relationship to the ultimate award or settlement received.
The wife in Williams was seeking to place a value only on cases that had already settled, solving both concerns of Quinn. The settlements eliminated any contingency as to whether any fee would ever actually be due and payable. With the contingency gone, the only issue centered on the amount of the fee that would become due, an issue that could readily be ascertained from the amount of the settlement. 683 So.2d at 1121. We agree with Williams as to contingency fee cases that have been actually settled at the time of distribution.
There is a split of authority in other states as to whether pending contingency cases should be included in the distribution of the parties' property. The states holding that contingency fee cases should not be included as marital property (or community property) have typically done so for three reasons:
"(1) the attorney has neither the right to receive the contingent fee nor any assurance that he will ever receive it; (2) the ultimate value of the fee depends on the amount of the award or settlement in the case and is therefore highly speculative; and, (3) the worth of the fee to an attorney remains intangible until the firm actually receives cash or other consideration for the services rendered."
Musser v. Musser, 909 P.2d 37, 40 (Okla. 1995); see also In re the Marriage of Zells, 143 Ill.2d 251, 157 Ill.Dec. 480, 572 N.E.2d 944 (1991). Moreover, most of these states do not allow for the valuation of goodwill as a stick in the bundle of marital property. See Travis v. Travis, 795 P.2d 96 (Okla.1990); In re Marriage of Zells, supra.
The states recognizing pending contingency cases acknowledge that the fees are not "earned" until the contingency is realized, but reason that:
"[W]hile it is true that an attorney is not entitled to the full benefit of his contract until the contingency upon which it is based is fulfilled, this does not mean that valid enforceable contract rights do not exist regardless of its fulfillment. For example, an attorney under a contingency fee contract who is discharged prior to fulfillment of the contract is entitled to reimbursement for the reasonable value of his services....
"Therefore, considering the nature of a contingency fee contract (the performance of continuing services), it is not the existence of rights under that contract which *381 must abide a future event, but an assessment of the value of those rights."
Garrett v. Garrett, 140 Ariz. 564, 683 P.2d 1166 (1984). Some states compare them to other intangible interests. See, e.g., Lyons v. Lyons, 403 Mass. 1003, 526 N.E.2d 1063 (1988) (pending lawsuits in which the parties are litigants); In re the Marriage of Vogt, 773 P.2d 631 (Colo.Ct.App.1989) (deferred compensation earned during the marriage but payable after dissolution of the marriage); Metzner v. Metzner, 191 W.Va. 378, 446 S.E.2d 165 (1994) (nonvested pension benefits).
Even those courts accepting pending contingency fee cases for inclusion also recognize that the value of those cases is highly speculative until the occurrence of the contingency vesting the right to compensation under the contract. Although it appears that at least one court allowed the trial court to value pending contingency cases at the time of dissolution, see Lyons, 526 N.E.2d at 1063 (remanding case for judge to consider equitable distribution of pending contingent fee case), most are reluctant to do so until and unless the cases have progressed to a point that a recovery is probable. That might be an, as yet, unperformed settlement, a favorable verdict, or an arbitration award. Some courts have allowed the trial court to earmark the appropriate cases for distribution, but retain jurisdiction until the right to fees has vested before equitably distributing their monetary value. See, e.g., Metzner, 446 S.E.2d at 165.
Unlike jurisdictions not recognizing intangible property as a divisible part of the marital estate, Florida has recognized a spouse's interest in the intangible assets of nonvested pension benefits and goodwill in a spouse's professional firm. See § 61.075, Florida Statutes (1996) (marital assets include nonvested pension benefits); Thompson v. Thompson, 576 So.2d 267 (Fla.1991) (goodwill properly considered marital asset). Shortly after the legislature statutorily made nonvested pension benefits part of marital property, the first district considered the issue in DeLoach v. DeLoach, 590 So.2d 956 (Fla. 1st DCA 1991). Although the court recognized that the legislature intended to codify existing law, the opinion distinguishes nonvested pension benefits from a mere expectancy:
"Unlike an expectancy, accession to which comes entirely by chance, the employee has some control over receipt of a nonvested pension. To be sure, the control is not absolute because the employee may be terminated or the business may close. However, if the employee continues to work for the required number of years, he will be legally entitled to his pension. This is what distinguishes a non-vested pension from a mere expectancy. Such a pension is property in the form of a contract right to deferred compensation subject only to the fulfillment of the condition of the requisite number of years of employment by the employee."
590 So.2d at 959, [quoting from Whitfield v. Whitfield, 222 N.J.Super. 36, 535 A.2d 986 (1987)].
We see real differences, however, between nonvested pension benefits and contingency fee contracts. For one thing, often the employee has contributed money or earnings to the fund of the nonvested pension. Thus, even though the company may fail, there are statutory protections (both federal and state) protecting the fiscal integrity of such funds and limiting the employer's legal right to access them. In the case of contingency fees, the lawyer does not contribute discrete money or wages or an ascertainable equivalent in labor or hours worked to any fund, and there are no comparable laws protecting the integrity of unearned contingency fees.[1]
Recoveries in contingency cases lack any suggestion of the probability that pension benefits have for the employee. We are therefore unable to avoid the special sine qua non embedded in contingency fee contracts. The client owes the lawyer nothing until and unless the client recovers money. This lawyer *382 and his firm may do everything they can reasonably and properly do, but the contingency may still never occur. In the case of pension benefits, the only legal contingency is that the employee work the required period of time for the pension rights to vest. The contingency lawyer may labor like Hercules for more years than it takes a pension to vest, reason like Cardozo, and orate like Webster but, in the end, recover nothing. From the time the case is taken on until virtually the moment of settlement or verdict, the lawyer faces the equal probability that the fee will be zero.
The wife also requests that we direct trial judges to reserve jurisdiction in these cases until the results of pending cases become known. Then, if a recovery is had and a fee thereby earned, the court can distribute the marital portions of the recovered fee. This method has been used for nonvested pension benefits, where it was explained as follows:
"Reserving jurisdiction over the future benefits in effecting a subsequent division of the actual monetary benefits [has] the dual advantage of allocating equally between the parties the risk that the rights may never vest [or mature] and enabling the court to better determine the actual proportion of future benefits that accrued to each party during the marriage.
"Using this method the nonemployee spouse is permitted to share in the increases in retirement benefits due to post-separation efforts which were built on the foundation of marital effort. Further, this method avoids prolonging the hearing with complicated actuarial evidence and costly expert testimony.
Kirkland v. Kirkland, 618 So.2d 295 (Fla. 1st DCA 1993); see also DeLoach 590 So.2d at 963. Usually, however, there is but one pension plan over which to reserve jurisdiction, while as this case shows there may be any number of contingency fees involved. We thus conclude that jurisprudential reasons militate against such a reservation of jurisdiction. The time necessary for the pending cases to resolve may delay and unreasonably lengthen the time for finality of the property distribution. That, in turn, may suggest bifurcation of the dissolution of the marriage from the equitable distribution and alimony issues. Unless the legislature so requires, we conclude that we should not read such a policy into the equitable distribution of marital assets.
We do believe, however, that the trial judge may properly consider future recoveries of contingency fees in setting the amount of permanent alimony. And, of course, the court will retain jurisdiction to consider modifications of such alimony. For example, if a judge awarding permanent alimony fixes the amount on the basis of probable future income from contingency fee cases, but later concludes that income failed to materialize as expected, then the court could adjust the amount of alimony in light of the payor's actual and reasonably projected income. Correspondingly, when the recipient is able to show a substantial change in the payor's ability, the court may also modify the amount. Thus, earning substantial sums in contingency fees may, in a proper case, be considered as the necessary change in circumstances. We leave the various possibilities to be fleshed out in future cases.
In this case, it appears that the trial judge failed to consider the probability of recoveries on the husband's pending contingency fee cases in fixing the amount of alimony. We therefore remand so that he can make that decision, leaving with him the prerogative to take such additional evidence on the subject from the parties as he may find is relevant and necessary to the purpose. We also note that at least one of the cases had settled by the time of the trial below, so we also direct the trial judge to receive such evidence on that and any other settled cases, as he may be advised, for inclusion in the equitable distribution, which the court may thereupon adjust as the facts may warrant.
STEVENSON and GROSS, JJ., concur.
NOTES
[1] The lawyer's right to quantum meruit when the client discharges the lawyer before the occurrence of the contingency scarcely enhances the inchoate fee into probable income. Even then, the discharged lawyer must await the occurrence of the contingencyi.e., a recovery by the client. See Rosenberg v. Levin, 409 So.2d 1016, 1021 (Fla.1982) ("the cause of action for quantum meruit arises only upon the successful occurrence of the contingency").