[Civ. No. 22477. Fourth Dist., Div. One. Dec. 17, 1980.]

In re the Marriage of LORRAINE A. and HOWARD L. DAVIS.
LORRAINE A. DAVIS, Respondent, v.
HOWARD L. DAVIS, Appellant.

COUNSEL

Alfred G. Hlawatsch for Appellant.

Hargreaves, Tierman & Jodzio and Frank M. Jodzio for Respondent.

OPINION

**BROWN (Gerald), J.**—Howard L. Davis appeals an order modifying the judgment dissolving his marriage to Lorraine A. Davis. The appeal involves only the portion of the order determining the parties' interests in Howard's military pension.

 Following the final judgment terminating their marriage in 1973, Lorraine returned to court in 1979 in the same action, seeking an increase in child support and a determination of her interest, if any, in her former husband's Navy pension, which had not been mentioned in the original pleadings or in the judgment of dissolution. In this proceeding to modify the judgment, the superior court had jurisdiction over child support, but not over the pension rights. Lorraine should have brought an independent action to determine her interest, if any, in them (*Bodle* v. *Bodle* (1978) 76 Cal.App.3d 758, 767 [143 Cal.Rptr. 115]; *In re Marriage of Cobb* (1977) 68 Cal.App.3d 855, 860, fn. 1 [137 Cal. Rptr. 670]). The order must be reversed.

Even though the lack of jurisdiction requires reversal, we address two other issues for the guidance of the parties and the court in any future litigation over the pension rights.

 First, we consider whether res judicata necessarily bars a new action and the admissibility of extrinsic evidence to establish that de-

fense. Under the circumstances present here, res judicata and collateral estoppel do not bar a new action by Lorraine to determine her interest in the pension, as long as the parties' pension rights were not in fact adjudicated in the dissolution (*Henn v. Henn* (1980) 26 Cal.3d 323, 330-331 [161 Cal.Rptr. 502, 605 P.2d 10]). However, in the new action, the parties may introduce extrinsic evidence to show what disposition, if any, they made of the pension rights at the time of the divorce (*In re Marriage of Snyder* (1979) 95 Cal.App.3d 636, 638 [157 Cal.Rptr. 196]).

■ Second, we consider the proper method of calculating the community interest in the pension. In 1968, about four and one-half years before the divorce, Howard completed twenty years' service as an enlisted man on active duty in the United States Navy. Howard and Lorraine were married for 17 of those years. Howard then transferred to the Fleet Reserve and began receiving "retainer pay." After 10 years in the Fleet Reserve, he was transferred to the retired list and began receiving "retired pay"—the pension which is the subject of this appeal. The superior court found "a person in the military with twenty (20) years of service retires at half-pay," and Howard's retirement pay had not increased because of his service in the Fleet Reserve. Accordingly, the court counted only Howard's 20 years of active duty in calculating the community interest in the retired pay, and fixed the community interest at 17/20ths, or 85 per cent.

Howard contends the denominator of the fraction should be 30 instead of 20, because he served a total of 30 years in the military—20 years on active duty and 10 years in the Fleet Reserve. ■ Benefits like pensions are part of the compensation an employee receives for his services and they are community property to the extent they are earned by employment during marriage (*In re Marriage of Brown* (1976) 15 Cal.3d 838, 842 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.2d 164]; *In re Marriage of Fithian* (1974) 10 Cal.3d 592, 596 [111 Cal.Rptr. 369, 517 P.2d 449]). Consequently, determining the proper method of calculating the community interest in military retired pay depends on whether it is earned by the individual's service on active duty only, or by his entire military service, both active and reserve.

Under the Navy retirement system, an enlisted person with 20 or more years of service on active duty may be transferred to the Fleet Reserve on request (10 U.S.C. § 6330(b)). He then is entitled to receive

"retainer pay" based on the number of years he served on active duty (§ 6330(c)). When his years of service, both active and reserve, total 30, a member of the Fleet Reserve is transferred to the retired list and begins receiving retired pay in the same amount as his retainer pay (§ 6331). A member of the Fleet Reserve is subject to recall to active duty in the event of war or national emergency (§ 6485(a)). A member of the Fleet Reserve may also be required to return to active duty for training, and during most of the time Howard was in the Reserve, a member was required to undergo a physical examination every four years (§ 6485(b)). While on active duty, a member of the Fleet Reserve receives the regular pay for an enlisted person of his rank and length of service; he does not receive retainer pay while on active duty (§ 6330; 37 U.S.C. § 204). If recalled, a member of the Fleet Reserve is entitled to recompute his retainer pay to reflect his additional time on active duty (§ 6331(c)).

An examination of the statutory scheme as a whole shows an enlisted person's entitlement to retired pay is derived solely from his service on active duty. Admittedly, the requirement of 30 years of service, which may include up to 10 years in the Fleet Reserve, suggests retired pay is compensation for both active duty and reserve membership. However, other features of the retirement system compel the opposite conclusion. The amount of the benefit is based solely on the number of years of active service, and the amount does not change when a member of the Fleet Reserve transfers to the retired list. In addition, the serviceman begins collecting the benefit, under the name of "retainer pay,"[1] as soon as he leaves active duty status. Finally, performance of services while a member of the Fleet Reserve is not a condition to receipt of retainer pay; the only condition is the member's availability to serve. Indeed, when he performs services, he is on active duty and does not receive retainer pay. Where an enlisted person leaves active duty with less than 30 years' active service, his membership in the Fleet Reserve for the balance of the 30-year period is merely a condition precedent to receipt of retired pay, just as living to retirement age may be a condition precedent to receipt of benefits under other retirement plans. The right to retired pay is earned solely by service on active duty. Consequently, only the serviceman's years on active duty

---

[1]In another context, *In re Marriage of Mercier* (1975) 48 Cal.App.3d 775, 779 [121 Cal.Rptr. 886], characterizes the difference between retainer pay and retired pay as purely semantic.

should be counted when calculating the community interest in retired pay. The trial court correctly computed the community interest here.[2]

The order is reversed.

Cologne, J., and Staniforth, J., concurred.

---

[2]*French* v. *French* (1941) 17 Cal.2d 775 [112 P.2d 235, 134 A.L.R. 366] (disapproved on another point in *In re Marriage of Brown, supra*, 15 Cal.3d 838, 851), does not require a different conclusion. There, the court was not concerned with the proper method of calculating the community interest in retired pay. Moreover, the statutes on which the court relied in *French* have been substantially revised since 1941 when *French* was decided (see generally *In re Marriage of Mercier, supra*, 48 Cal.App.3d 775, 778-779).