[No. G015048. Fourth Dist., Div. Three. June 22, 1994.]

In re the Marriage of LOU V. and CAROLYN J. HUGHES.
LOU V. HUGHES, Appellant, v.
CAROLYN J. HUGHES, Respondent.

**COUNSEL**

Lou V. Hughes, in pro. per., for Appellant.

Jan Smith and Anthony H. Ransford for Respondent.

**OPINION**

**SONENSHINE, J.**—Lou V. Hughes appeals a postdissolution order on an order to show cause granting Carolyn Hughes's requested relief.

I

Lou's and Carolyn's marriage ended in 1987. The judgment of dissolution determined their custody and visitation rights; all other issues were reserved.

In 1993, a stipulated judgment upon further reserved issues was entered. It determined the parties' property rights, including, inter alia, Lou's military retirement benefits. Specifically, the parties agreed: "Respondent, LOU V. HUGHES, has retired from the United States Marine Corps. Date of enlistment: June 1, 1972. Date of Retirement: September 30, 1992. [¶] [] The parties stipulate to the following statistics: [¶] Date of Marriage: September 9, 1972 [¶] Date of Separation: June 1, 1985 [¶] Elapsed time of marriage 12 years and 9 months. [¶] Marriage was terminated (Bifurcation) on August 3, 1987. [¶] . . . [¶] . . . [¶] Respondent's date of birth: October 25, 1951 [¶] Respondent's social security number: 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 [¶] [] The parties both stipulate that they are under the jurisdiction of the Court of California for the purpose of resolving this matter and specifically for the purpose of issuing an enforceable Qualified Domestic Relations Order pertaining to the retirement interest acquired by reason of . . . Respondent's employment with the

United States Marine Corps. [¶] [] A Qualified Domestic Relations Order (Q.D.R.O.) shall be prepared forthwith regarding division of [such] pension plan (. . . United States Marine Corps). Said Q.D.R.O. will reflect statistics set forth above and the court shall continue to retain jurisdiction over all aspects of the pension plan, preparation of Q.D.R.O. and related issues. Attorney for Petitioner shall prepare Q.D.R.O. for U.S.M.C. retirement."

After Lou refused to sign the proposed Q.D.R.O., Carolyn sought the underlying order on order to show cause, asking the court to execute the order without Lou's approval. After the matter was continued four times and over Lou's objections, the order was granted.

## II

The Q.D.R.O. prepared by Carolyn provided that her share of Lou's benefits is equal to one-half of the number of months they were married while he was in the service (152.3) divided by the total months of his military service (240). In other words, she is entitled to .32 of each retirement benefit payable to Lou from the United States Military Retirement System benefits. The Q.D.R.O. further ordered the Marine Corps to pay to Carolyn her share of the benefits "as they become due and consistent with applicable law [and are to] commence forthwith or at the earliest possible time."

By way of declaration and without any citation to authority, Lou contested the order. His arguments below are repeated on appeal. He concedes the statistical information relating to his military service and contained in the judgment is correct but explains other factors must be taken into account for purposes of the Q.D.R.O. Specifically, he maintains the denominator is wrong because after his retirement on June 1, 1992, he transferred to the Fleet Marine Corps Reserve and is now receiving retainer pay. And according to Lou, this is significant for several reasons. His retainer pay is not divisible. He is not now retired and therefore his retirement pay can be divided only *after* he completes another 10 years in the reserves. And as a corollary, he maintains Carolyn's formula is wrong because the months of service are 360 and not 240. (He is not able to retire until 30 years of service—20 on active duty and 10 in the reserves.) His arguments fail for several reasons.

We first note the specific relief Carolyn requested. She asked the trial court to approve a Q.D.R.O. which was based on terms to which the parties had previously stipulated pursuant to a judgment which had long since become final.

Moreover, the specific issues raised by Lou have already been asked and answered by California courts. In *In re Marriage of Davis* (1980) 113 Cal.App.3d 485 [169 Cal.Rptr. 863], the husband, after 20 years of active duty service as a Navy enlisted man, transferred to the Fleet Reserve and began receiving retainer pay. The trial court, in determining the community interest in his retirement pay, included only the 20 years of active duty and not the years he served in the reserves and for which he received retainer pay. On appeal, husband contended "the denominator of the fraction should be 30 instead of 20, because he served a total of 30 years in the military . . . ." (*Id.* at p. 488.)

The Court of Appeal agreed with the trial court. "Under the Navy retirement system, an enlisted person with 20 or more years of service on active duty may be transferred to the Fleet Reserve on request (10 U.S.C. § 6330(b)). He [or she] then is entitled to receive 'retainer pay' based on the number of years he [or she] served on active duty (§ 6330(c)). When his [or her] years of service, both active and reserve, total 30, a member of the Fleet Reserve is transferred to the retired list and begins receiving retired pay in the same amount as his [or her] retainer pay (§ 6331). . . . [¶] An examination of the statutory scheme as a whole shows an enlisted person's entitlement to retired pay is derived solely from his [or her] service on active duty. Admittedly, the requirement of 30 years of service, which may include up to 10 years in the Fleet Reserve, suggests retired pay is compensation for both active duty and reserve membership. However, other features of the retirement system compel the opposite conclusion. The amount of the benefit is based solely on the number of years of active service, and the amount does not change when a member of the Fleet Reserve transfers to the retired list. In addition, the [enlisted person] begins collecting the benefit, under the name of 'retainer pay,' as soon as he [or she] leaves active duty status. Finally, performance of services while a member of the Fleet Reserve is not a condition to receipt of retainer pay; the only condition is the member's availability to serve. . . . Where an enlisted person leaves active duty with less than 30 years' active service, his [or her] membership in the Fleet Reserve for the balance of the 30-year period is merely a condition precedent to receipt of retired pay, just as living to retirement age may be a condition precedent to receipt of benefits under other retirement plans. The right to retired pay is earned solely by service on active duty. Consequently, only the service[person's] years on active duty should be counted when calculating the community interest in retired pay." (*In re Marriage of Davis, supra,* 113 Cal.App.3d at pp. 488-490, fn. omitted.)[1]

---

[1]Lou asks us to rely on *Taggart v. Taggart* (Tex. 1977) 552 S.W.2d 422, which concluded the denominator should be 360 because "[a]t the end of the twenty years, [husband] was not

We agree with *Davis*. The trial court correctly concluded the denominator should be 240 and not 360. But one issue remains. Is Carolyn entitled to receive her share of the payments *now*? Lou says no. He concedes she is entitled to receive her share of his *retirement* pay but that is only when he is retired—June 1, 2002. He maintains his retainer pay, that which he is now receiving, is not hers because she has no interest in it and because the original stipulation did not cover it. Neither point has merit.

As explained in *Davis*, retainer pay and retirement pay are synonymous. The amount of Lou's retainer pay is based solely on his years of active duty. The years served in the reserves do not modify the amount of the retirement benefit. Therefore, each dollar he is now receiving as retainer pay is exactly the same as it would be if it were labeled retirement pay. Both California case law and federal statutory law confirm this analysis. As observed in *In re Marriage of Mercier* (1975) 48 Cal.App.3d 775 [121 Cal.Rptr. 886], "the difference between 'retainer' pay and 'retirement' pay is one of semantics . . . ." (*Id.* at p. 779.)

Moreover, the entire statutory scheme enacted by Congress mandates the same conclusion. Indeed, it specifically contemplates that retainer pay is the same as retirement pay and the rights therefore are recoverable in exactly the same fashion. The statute which delineates the means by which a non-military divorced spouse may enforce court-ordered military retirement payments is entitled *payment of retired or retainer pay in compliance with court orders*. (10 U.S.C. § 1408.) Section 1408(a)(7) of title 10, United States Code, specifically states, "The term 'retired pay' includes retainer pay." Therefore, pursuant to section 1408(d)(1), Carolyn is entitled to receive her community property share of Lou's retainer benefits.[2]

---

entitled to receive any retirement benefits based upon his term of service, because he had to serve in the Fleet Reserve for an additional ten years. It was, therefore, his [360] months of service that entitled him to the retirement benefits." (*Id.* at p. 424.)

As explained in *Davis*, the crucial factor is not when he is entitled to receive the benefits but upon which years of service the benefits are dependent.

[2]Section 1408(d)(1) of title 10, United State Code, states, "After effective service on the Secretary concerned of a court order providing for the payment of child support or alimony or, with respect to a division of property, specifically providing for the payment of an amount of the disposable retired pay from a member to the spouse or a former spouse of the member, the Secretary shall make payments (subject to the limitations of this section) from the disposable retired pay of the member to the spouse or former spouse in an amount sufficient to satisfy the amount of child support and alimony set forth in the court order and, with respect to a division of property, in the amount of disposable retired pay specifically provided for in the court order. In the case of a member entitled to receive retired pay on the date of the effective service of the court order, such payments shall begin not later than 90 days after the date of effective service. In the case of a member not entitled to receive retired pay on the

The order is affirmed. Carolyn is entitled to her costs on appeal.[3]

Wallin, Acting P. J., and Crosby, J., concurred.

---

date of the effective service of the court order, such payments shall begin not later than 90 days after the date on which the member first becomes entitled to receive retired pay."

[3]Carolyn also asks for attorney fees on appeal. While it seems she may be entitled to receive them, that determination is best left to the trial court. (Fam. Code, § 2030.)